The STATE of Ohio, Appellee,

v.

KEHOE, Appellant.

[Cite as *State v. Kehoe* (1999), 133 Ohio App.3d 591.]

Court of Appeals of Ohio,
Twelfth District, Clinton County.

No. CA98–02–006.

Decided May 17, 1999.

594

596

*William E. Peelle,* Clinton County Prosecuting Attorney, and *Deborah S. Quigley,* Assistant Prosecuting Attorney, for appellee.

*Sheets, Ernst & Diehl, David E. Ernst,* and *Gregory J. Demos,* for appellant.

WILLIAM W. YOUNG, Judge.

Defendant-appellant, Cheyne Kehoe, appeals his convictions in the Clinton County Court of Common Pleas for felonious assault and attempted murder, both of which included gun specifications, and carrying a concealed weapon. We affirm.

On February 15, 1997, appellant was a passenger in a Chevrolet Suburban driven by his brother, Chevie Kehoe. At approximately 1:00 p.m., Trooper John Harold Harker of the Ohio State Patrol ("OSP") noticed the Suburban traveling along State Route 73, near the I–71 interchange. The Suburban was traveling slower than other traffic, and it did not have a front license plate. As the Suburban passed Harker, he observed the passenger turning to watch him.

Harker called in the Suburban's registration and received a report that the license plates had expired. He then pulled over the vehicle in the city of Wilmington, Clinton County, Ohio. Tpr. Harker's patrol car was equipped with video and audio surveillance equipment that activated when the car's overhead lights were turned on. This equipment recorded the events of the stop.

After stopping the Suburban, Harker approached the driver's side window and asked for Chevie's identification. Chevie did not have a driver's license so Harker requested that Chevie exit the vehicle. Appellant was sitting in the front passenger seat, wearing a light-colored shirt and no coat or sunglasses. Harker and Chevie walked back to the patrol car where Harker questioned Chevie. During this time, Deputy Robert Gates of the Clinton County Sheriff's Department passed by in a marked car, and Harker signaled for assistance.

Gates joined Harker and Chevie and noticed appellant moving inside of the Suburban. Gates noticed that appellant repeatedly looked back at the officers' location in the side mirror of the Suburban.

When Harker attempted to arrest Chevie for not having a driver's license, Chevie broke free and ran back to the Suburban. As Chevie attempted to enter

the Suburban, Harker shut the door with his right hip. Chevie struggled with the officers, forcing Harker's back against the driver's door.

Gates saw appellant moving his right hand from underneath some clothing in the front seat. Appellant raised a semi-automatic handgun and fired through the window. Gates returned fire. As the window shattered from the gun shots, both officers ran towards Harker's patrol car. Harker saw appellant, still in the Suburban, pointing the handgun at him.

Appellant then exited the Suburban and pointed the weapon at Gates while crouched in a shooting position. At this time, appellant was wearing sunglasses and a winter coat. Appellant and Gates exchanged fire, but neither was injured. Appellant fled the scene, but later surrendered.

On February 20, 1997, appellant was indicted on five counts: Counts One and Two, felonious assault, in violation of R.C. 2903.11(A)(2), felonies of the first degree, with gun specifications; Counts Three and Four, attempted murder, in violation of R.C. 2923.01, felonies of the first degree, with gun specifications; and Count Five, carrying a concealed weapon, in violation of R.C. 2923.12, a felony of the fourth degree. On January 12, 1998, after a five-day jury trial, the jury found appellant guilty on Counts One, Two, Four and Five.

Appellant was sentenced on January 20, 1998. Counts Two and Four were merged for sentencing purposes. Appellant was ordered to serve eight years imprisonment on Count One, with an additional three years' imprisonment on the gun specification; nine years' imprisonment on Count Four, with an additional three years imprisonment on the gun specification; and seventeen months' imprisonment on Count Five. All of the sentences, including the two gun specification sentences, were ordered to run consecutively, with the gun specifications to be the last two sentences served.

Appellant appeals, raising seven assignments of error. For purposes of clarity, we will address the assignments of error out of order.

Assignment of Error No. 1:

"Appellant's conviction for felonious assault upon Trooper Harker was not supported by legally sufficient evidence and is contrary to law."

In his first assignment of error, appellant contends that there was not sufficient evidence to support his conviction for felonious assault upon Harker. Appellant asserts that the state failed to present evidence that appellant did any act other than pointing a gun at Harker and that pointing a gun, in itself, is insufficient to support the conviction.

Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541, 546.

In this inquiry, the appellate court must determine whether the state has met its burden of production at trial. The court is to assess "not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *Thompkins,* 78 Ohio St.3d at 390, 678 N.E.2d at 549 (Cook, J., concurring). Thus, the court, after viewing the evidence in a light most favorable to the prosecution, must conclude whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Smith* (1997), 80 Ohio St.3d 89, 113, 684 N.E.2d 668, 690–691, citing *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

R.C. 2903.11 defines "felonious assault:"

"(A) No person shall knowingly:

" * * *

"(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code."

"Attempt" is defined by R.C. 2923.02(A):

"No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."

In *State v. Woods* (1976), 48 Ohio St.2d 127, 2 O.O.3d 289, 357 N.E.2d 1059, vacated in part on other grounds, *Woods v. Ohio* (1978), 438 U.S. 910, 98 S.Ct. 3133, 57 L.Ed.2d 1153, the Supreme Court of Ohio explained that a person is guilty of criminal attempt when the person "purposely does or omits to do anything which is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime. To constitute a substantial step, the conduct must be strongly corroborative of the actor's criminal purpose." *Id.* at paragraph one of the syllabus.

The Supreme Court of Ohio has addressed what conduct constitutes a substantial step demonstrating an intent to commit a felonious assault. In *State v. Brooks* (1989), 44 Ohio St.3d 185, 542 N.E.2d 636, the court held:

"The act of pointing a deadly weapon at another, without additional evidence regarding the actor's intention, is insufficient evidence to convict a defendant of the offense of 'felonious assault' as defined by R.C. 2903.11(A)(2)." *Id.* at syllabus.

Nonetheless, the act of pointing a gun at another "coupled with a threat, which indicates an intention to use such weapon," is sufficient evidence to support a

conviction for felonious assault. *State v. Green* (1991), 58 Ohio St.3d 239, 569 N.E.2d 1038, syllabus.

In both *Brooks* and *Green,* the court upheld the defendants' felonious assault convictions based upon the totality of the circumstances. In *Brooks,* the defendant became embroiled in a heated argument with the victim in a bar. The defendant then drew a revolver and threatened to shoot the victim. The defendant did not do so, though, leaving as the bar owner summoned the police. Under the circumstances, the court determined that a jury could reasonably conclude that the defendant's actions were "strongly corroborative" of his intent to cause harm. 44 Ohio St.3d at 192, 542 N.E.2d at 643.

In *Green,* the court also determined that the defendant's actions were sufficient to establish a felonious assault. In that case, the defendant pointed a loaded and cocked rifle at a police officer's head as the officer approached the defendant's home. The defendant then yelled that, if the police did not have a warrant, they had to leave. The court found that the defendant's actions, together with his evident threat, demonstrated an intent to cause harm. 58 Ohio St.3d at 242, 569 N.E.2d at 1041.

As noted by the Supreme Court of Ohio in *Brooks,* a similar result was also reached in *State v. Sunderland* (Dec. 19, 1985), Cuyahoga App. No. 49950, unreported, 1985 WL 4620, where the defendant, thinking that an off-duty police officer was someone else, pointed a shotgun at the officer and threatened to "blow [his] head off." A struggle for the gun ensued, during which the defendant continued to threaten the officer. Thus, the defendant's actions "amounted to a substantial step in a course of conduct calculated to cause physical harm to the officer." 44 Ohio St.3d at 192, 542 N.E.2d at 642, citing *Sunderland.*

▆ Upon a thorough review of the record, we find that there was sufficient evidence presented to demonstrate that appellant's actions were strongly corroborative of an intent to cause physical harm. Most important, Gates testified that appellant fired at Harker from inside of the Suburban. This fact, by itself, is sufficient to support appellant's conviction for felonious assault.

The circumstances of this case serve to further demonstrate appellant's intent to harm Harker. Appellant's brother, Chevie, was attempting to flee the officers. The officers were struggling with Chevie just outside the Suburban, trying to prevent his escape. Appellant took out a gun from underneath some clothing and raised the gun as if to fire at the officers. Even had appellant not fired upon Harker, appellant's actions were strongly corroborative of an intent to harm the officers and aid in his brother's escape. That appellant fired upon the officers only proves such an intent.

Therefore, the state provided sufficient evidence to sustain appellant's conviction for felonious assault. Accordingly, appellant's first assignment of error is overruled.

Assignment of Error No. 2:

"Appellant's conviction for felonious assault upon Trooper Harker was against the manifest weight of the evidence."

In his second assignment of error, appellant contends that the evidence presented at trial weighed against conviction. Appellant claims that the jury could not reasonably conclude that he committed a felonious assault upon Harker.

Unlike a challenge to the sufficiency of the evidence, which attacks the adequacy of the evidence presented, a challenge to the manifest weight of the evidence attacks the credibility of the evidence presented. *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d at 546–547. When inquiring into the manifest weight of the evidence, the reviewing court sits as the thirteenth juror and makes an independent review of the record. *Id.; Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 2218, 72 L.Ed.2d 652, 661–662. In taking on this role, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 718.

A jury verdict will not be disturbed on appeal if reasonable minds could arrive at the conclusion reached by the jury. *State v. Fields* (1995), 102 Ohio App.3d 284, 287, 656 N.E.2d 1383, 1384–1385.

Upon review of the record, we cannot say that the jury lost its way in finding appellant guilty of felonious assault. The jury could easily conclude that the evidence presented demonstrated that appellant intended to cause physical harm to Harker, and that appellant took action to effectuate that intent. Appellant testified that he did not intend harm and that the officers fired upon him first. But, as noted in our discussion of appellant's first assignment of error, appellant's actions, when viewed in the totality of the circumstances, clearly demonstrated an intent to cause harm and aid his brother in fleeing the police. More importantly, appellant acted out this intent, firing upon Harker according to the testimony of Gates.

Therefore, we find that the manifest weight of the evidence supported appellant's conviction for felonious assault. Accordingly, appellant's second assignment of error is overruled.

Assignment of Error No. 3:

"The trial court committed prejudicial error when it permitted on multiple occasions, and over defense objection, state's witnesses to testify to matters beyond their knowledge and qualifications and where such testimony did not comport with the Ohio Rules of Evidence, in various respects."

In his third assignment of error, appellant challenges the testimony of Sergeant Robert Johnson of the OSP, the lead investigating officer on the case. In his testimony, Johnson detailed the investigation and the circumstances surrounding the shoot-out. Appellant claims that Johnson was allowed to testify as to matters outside his personal knowledge and to improperly speculate as to events surrounding the shoot-out. We will address the issues presented by appellant, which appellant has designated as "sub-assignments of error," out of order.

Sub–Assignment of Error No. 3(A):

"The trial court erred when it permitted [the] state's witness to render opinion testimony regarding whether appellant fired his weapon from inside the Suburban."

Sub–Assignment of Error No. 3(C):

"The trial court committed reversible error when it permitted Sergeant Johnson to render an opinion as to how many shots appellant fired during the incident."

Appellant argues that the trial court erred in allowing Johnson to state opinions on whether appellant fired his weapon from inside of the Suburban and how many times appellant fired his weapon. Appellant asserts that Johnson was not qualified as an expert and that he should not have been allowed to state an opinion on these matters.

We note that the state specifically averred to the trial court that Sgt. Johnson testified as a lay witness. Thus, we must determine whether his testimony comported with the applicable Rules of Evidence.

Evid.R. 701 governs opinion testimony by lay witnesses:

"If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue."

The first requirement of Evid.R. 701 is a restatement of the firsthand knowledge rule, Evid.R. 602, which states:

"A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself."

To satisfy the first requirement of Evid.R. 701, it must be determined whether the opinion of the lay witness is " 'one that a rational person would form on the basis of the observed facts.' " *State v. Mulkey* (1994), 98 Ohio App.3d 773, 784, 649 N.E.2d 897, 904, quoting *Lee v. Baldwin* (1987), 35 Ohio App.3d 47, 49, 519 N.E.2d 662, 664. The second requirement of Evid.R. 701 mandates that "the opinion must assist the trier of fact in understanding the testimony of the witness or in determining a fact in issue." *State v. Sibert* (1994), 98 Ohio App.3d 412, 426, 648 N.E.2d 861, 869, citing *Lee*, 35 Ohio App.3d at 49, 519 N.E.2d at 664.

■■■ Evid.R. 701 grants the trial court wide latitude in allowing or controlling lay witness opinion testimony. An appellate court reviews the decisions of the trial court concerning lay witness testimony for an abuse of discretion. *Urbana ex rel. Newlin v. Downing* (1989), 43 Ohio St.3d 109, 113, 539 N.E.2d 140, 144–145; *State v. Brumback* (1996), 109 Ohio App.3d 65, 77, 671 N.E.2d 1064, 1071–1072. Furthermore, the party challenging the testimony must demonstrate that, if the trial court did abuse its discretion, such abuse "materially prejudiced the objecting party." *Id.*

■■■ Johnson testified that glass fragments from the Suburban window found at the crime scene were consistent with a bullet being shot from inside the Suburban. Contrary to appellant's contention, Johnson did not state that appellant did, in fact, fire from inside of the Suburban.

Johnson also testified that, based upon his investigation of the crime scene, he believed that appellant fired four shots during the shoot-out with Gates. Johnson testified that his investigation revealed two gouges in the road that could have been made by bullets. He further testified that a round hole was present in the front spoiler of Harker's patrol unit and that this hole was consistent with being caused by a bullet. He also testified that the patrol unit had a flat tire as a result of the shoot-out.

As to these matters, Johnson only testified as to how he interpreted the evidence according to his seventeen years of experience as a police officer and investigator. He testified that, during his training as a member of the OSP S.W.A.T. team, he had personally shot tempered glass like that in the Suburban. He did so to observe the effects that the bullets would have upon tempered glass. In conducting his investigation in the instant case, he discovered a large amount

of glass inside the Suburban and a smaller amount of glass on the road where the Suburban had been parked. He believed that this was consistent with a shot being fired from inside the Suburban, which would cause some glass to fly outwards with the bullet, while the majority of the glass would fall into the Suburban.

Johnson further testified that he had viewed the gouges in the roadway, the spoiler, and the flat tire. He testified that this physical evidence could have been caused by bullets having contact with the road and patrol unit. Johnson thought that this evidence was consistent with his experience and similar evidence observed at past crime scenes.

Johnson demonstrated personal knowledge of these observed facts in the instant case. He also demonstrated a rational basis for his conclusions by providing details of both his perceptions of the crime scene and the extent of his experience investigating crime scenes. Johnson's testimony was similar to that allowed in *State v. Norman* (1982), 7 Ohio App.3d 17, 7 OBR 19, 453 N.E.2d 1257, where the officer was allowed to state his opinion regarding the shot pattern made by a shotgun. In that case, the officer was speaking from experience, both as an officer and as a hunter, and his testimony was deemed to aid the jury in understanding his testimony. *Id.* at 18–19, 7 OBR at 20–21, 453 N.E.2d at 1258–1261.

Johnson's testimony was also similar to that presented in *State v. Jells* (1990), 53 Ohio St.3d 22, 559 N.E.2d 464, rehearing/reconsideration denied, wherein the officer was allowed to present his conclusion that shoe prints found at the crime scene matched the defendant's shoes. The court in *Jells* stated that when the pattern is identified as being similar to that customarily made by shoes, then the conclusion is based upon facts that can be recognized and understood by lay witnesses. In essence, the testimony is " 'more in the nature of description by example than the expression of a conclusion.' " *Id.* at 29, 559 N.E.2d at 471, quoting *State v. Hairston* (1977), 60 Ohio App.2d 220, 223, 14 O.O.3d 191, 193, 396 N.E.2d 773, 775.

When testifying as to his opinions, Johnson merely described the evidence he observed and how he interpreted that evidence as a lay witness with significant experience. The trial court did not abuse its discretion by allowing Johnson to testify on these matters.

Sub–Assignment of Error No. 3(B):

"The trial court committed reversible error when it permitted [the] state's witness to render opinion regarding the contents of the video of the incident where the witness was not qualified to do so and the videotape itself was the best evidence of its contents."

Appellant argues that the trial court erred by allowing Johnson to interpret what he saw on the videotape of the shoot-out. Appellant asserts that Johnson was not qualified to present such testimony and that the videotape was the best evidence of its contents.

■ Appellant failed to object to Johnson's testimony on the basis of Evid.R. 1002, the best evidence rule. Thus, this issue is waived, and it may not be raised on appeal. *State v. Crawford* (1989), 60 Ohio App.3d 61, 62, 573 N.E.2d 784, 786–787.

■ Appellant also asserts that Johnson was not qualified to testify as to the contents of the videotape. Johnson established that part of his duties as an investigator for the OSP is to review videotapes of crimes, watching the tapes at a variety of speeds to determine what crimes are committed. He was entitled to testify as to what he saw when viewing the videotape in this case. Furthermore, Johnson stated only what he saw when viewing the videotape at different speeds. Personal observations of fact do not require expert testimony. *State v. Robertson* (Nov. 23, 1994), Cuyahoga App. No. 66510, unreported, 1994 WL 663461, citing *State v. Nagel* (1986), 30 Ohio App.3d 80, 30 OBR 136, 506 N.E.2d 285.

In *Robertson, supra*, security guards at a hospital testified about what they saw on video monitors when the hospital's security cameras taped the defendant molesting a young boy. One of these guards testified that he had seen the young boy's penis when he watched the tape on a different monitor. The defendant argued that this was an opinion that should not have been allowed to be presented. The court disagreed, stating that the "conclusions were within the capabilities of a lay witness, and did not require scientific, technical, or other specialized knowledge." *Id.* Furthermore, there is no general rule that interpretation of a mechanical reproduction must be made by an expert. *Id.*

In general, Johnson stated only his factual observations of the videotape. Such testimony was helpful to the jury as it conveyed his perceptions. Furthermore, Johnson viewed the videotape at different speeds and was testifying only as to what was observable at those speeds. See *id.* Therefore, his testimony concerning the tape was admissible under Evid.R. 701.

Sub–Assignment of Error No.3(E):

"The trial court committed reversible error when it permitted Sergeant Johnson to testify to examples of other shoot–outs, where persons were not hit by bullets when the purpose of the shooter was to kill where such testimony was not relevant to the case at bar and was based upon hearsay."

Sub–Assignment of Error No. 3(F):

"The trial court committed reversible error when it permitted Sergeant Johnson to testify regarding how many bullets strike their target when fired with an intent to kill."

Appellant asserts that the trial court erred by allowing Johnson to testify about past shoot-outs, none of which involved appellant, and that not every bullet fired with the intent to kill will necessarily hit the target. Appellant contends that such testimony was irrelevant to the case.

Evid.R. 401 provides:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

The threshold of admissibility is a low one, reflecting the policy favoring the admission of relevant evidence for the trier of fact to weigh. *State v. Morgan* (1986), 31 Ohio App.3d 152, 154, 31 OBR 241, 243, 509 N.E.2d 428, 430–431. Generally speaking, the question of whether evidence is relevant is ordinarily not one of law, but rather it is one that the trial court can resolve based upon common experience and logic. *State v. Lyles* (1989), 42 Ohio St.3d 98, 99, 537 N.E.2d 221, 221–222. Thus, whether to allow or exclude relevant evidence is left to the trial court's sound discretion. *State v. Sage* (1987), 31 Ohio St.3d 173, 180, 31 OBR 375, 380–381, 510 N.E.2d 343.

We find that the trial court did not abuse its discretion in allowing Johnson to testify about past shoot-outs and how often a bullet may miss its target. Johnson testified about a shoot-out that he had been personally involved in, and in which only one of six shots fired hit its target. Johnson also testified about other shoot-outs that he had investigated, in which not all of the shots fired had hit their targets. Such testimony was relevant because it could aid the jury in understanding why neither appellant nor the officers were injured during the shoot-out, even though they were only a few feet apart when shots were fired.

In addition, appellant argued at trial that he did not intend to harm either officer. Johnson's testimony was relevant to attacking this contention by appellant. Johnson testified that, even though police officers are trained to shoot at the "mass," or the center of the body, they often miss during shoot-outs, and that their attackers often do the same. Such testimony could aid the jury in resolving any factual dispute as to whether appellant intended to harm the officers. Therefore, the trial court did not err by allowing this testimony.

Sub–Assignment of Error No. 3(D):

"The trial court committed reversible error when it permitted Sergeant Johnson to testify to the results of a ballistics test, which was not conducted by him personally."

Appellant asserts that the trial court erred by allowing Johnson to testify that a flattened bullet found in the underside of Harker's patrol car was a .45 round fired from appellant's gun. Appellant argues that Johnson was not qualified as an expert in ballistics and that his testimony should have been excluded as hearsay.

Evid.R. 801(C) defines "hearsay":

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

The rule prohibiting hearsay, Evid.R. 802, is based upon the unreliability of hearsay evidence and the impossibility of cross-examination. *State v. Armstead* (1993), 85 Ohio App.3d 247, 253, 619 N.E.2d 513, 516–517. Thus, if the statement is offered to prove the truth of the matter asserted and the statement does not fall into any of the exceptions to the rule against hearsay, Evid.R. 803 and 804, the statement must be excluded from evidence. Evid.R. 802; *State v. Carter* (1995), 72 Ohio St.3d 545, 549, 651 N.E.2d 965, 971.

Appellant is correct that the state failed to qualify Johnson as an expert in ballistics. In fact, the state expressly averred to the trial court that Johnson was testifying only as a lay witness. Johnson did not test the bullet, nor was he present for the test. In addition, the ballistics report that Johnson referred to in his testimony was not introduced into evidence at trial. Although appellant and the state did stipulate that it was a flattened bullet that was discovered, the parties did not stipulate as to the caliber of the bullet or that it was fired from appellant's weapon.

Under such circumstances, it is clear that the conclusion in the ballistics report referred to by Johnson that the bullet found at the scene was a .45 caliber round was hearsay, as it was offered for its truth. Although appellant was able to attack Johnson's observations concerning this bullet, appellant was denied the ability to directly attack the testing of the bullet or the conclusion of the ballistics report. Under such circumstances, such testimony should have been excluded by the trial court.

Nonetheless, we find that this error by the trial court was harmless in light of the substantial evidence against appellant. Crim.R. 52(A) provides:

"Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."

Error in the admission of evidence is harmless when there is no reasonable probability that the testimony contributed to the defendant's conviction, that is, where the error is harmless beyond a reasonable doubt. *State v. Lytle* (1976), 48 Ohio St.2d 391, 403, 2 O.O.3d 495, 501–502, 358 N.E.2d 623, 630. Error will not contribute to the defendant's conviction when the remaining, properly admitted evidence, standing alone, constitutes overwhelming proof of the defendant's guilt. *State v. Williams* (1983), 6 Ohio St.3d 281, 290, 6 OBR 345, 352–353, 452 N.E.2d 1323, 1333.

In the instant case, appellant admitted to shooting twice at Gates. This admission, by itself, is sufficient to support an inference by the jury that appellant sought to harm or kill Gates. Even without the improper testimony concerning the bullet fragment found, appellant's admission was before the jury, as well as the videotape of the shoot-out and the testimony of the officers. The trial court's error was harmless beyond a reasonable doubt.

Therefore, we find that the trial court did not err so as to affect any substantial rights of appellant. Accordingly, appellant's third assignment of error is overruled.

Assignment of Error No. 7:

"The trial court committed reversible error when it submitted instruction to the jury that altered the elements of the offense."

In his seventh assignment of error, appellant contends that a part of the trial court's jury instruction was improper because it did not properly set forth the elements of felonious assault that the state must prove. The contested jury instruction reads:

"The act of pointing a deadly weapon at another, coupled with a threat which indicates an intention to use such weapon, is sufficient evidence to convict a defendant of the offense of felonious assault as defined by [R.C.] Section 2903.11(A)(2)."

Appellant asserts that this jury instruction altered the elements of felonious assault to his prejudice.

Appellant failed to object to the instruction at trial, so the issue is waived on appeal, except for plain error. Crim.R. 52(B)[1]; *State v. Underwood* (1983), 3 Ohio St.3d 12, 13, 3 OBR 360, 360–361, 444 N.E.2d 1332, 1333. Under plain error analysis, we must determine whether the substantial rights of the

---

1. Crim.R. 52(B) reads:
"Plain error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

accused are so severely affected as to undermine the fairness of the guilt-determining process. Crim.R. 52(B); *State v. Swanson* (1984), 16 Ohio App.3d 375, 377, 16 OBR 430, 432, 476 N.E.2d 672, 675. It must appear that, but for the error, the result of the trial clearly would have been otherwise, and that to not correct the error would be a clear miscarriage of justice. *State v. Bock* (1984), 16 Ohio App.3d 146, 150, 16 OBR 154, 158–159, 474 N.E.2d 1228, 1232–1233.

■ The contested jury instruction is a verbatim reading of the syllabus in *State v. Green* (1991), 58 Ohio St.3d 239, 569 N.E.2d 1038, which appellant cites as controlling authority in his first assignment of error. Although this jury instruction did not specifically describe the statutory elements of the offense, the trial court's jury instructions, when read as a whole, dispel any ambiguity that may have existed within the challenged portion. See *State v. Price* (1979), 60 Ohio St.2d 136, 14 O.O.3d 379, 398 N.E.2d 772, paragraph four of the syllabus. Prior to giving the contested instruction, the trial court explained to the jury the statutory definition of "felonious assault," as well as the elements of the crime that the state must prove pursuant to R.C. 2903.11(A)(2).

Therefore, we find that appellant's argument is without merit. Appellant's seventh assignment of error is overruled.

Assignment of Error No. 4:

"Appellant was denied his constitutional right to a fair trial because he received ineffective assistance of counsel."

In his fourth assignment of error, appellant contends that his trial counsel was ineffective for not requesting certain jury instructions and for not objecting to specific evidence and testimony, statements by the prosecutor in closing arguments, or the jury instructions given by the trial court. Again, appellant has designated the issues presented for review as "sub-assignments of error."

Sub–Assignment of Error No. 4(A):

"Appellant was denied effective assistance of counsel where trial counsel fails to request jury instruction on the lesser included offense of aggravated assault."

Appellant contends that his trial counsel should have requested a jury instruction on aggravated assault because the evidence supported the inference that appellant fired upon the officers in self-defense. Appellant asserts that he was reasonably provoked, and that because aggravated assault is a lesser included offense of felonious assault, a jury instruction on aggravated assault should have been given.

To establish a claim of ineffective assistance of counsel, a defendant must first demonstrate that trial counsel's performance was deficient, namely, that counsel's representation fell below the objective standard of reasonable competence under

the circumstances. Second, a defendant must show that, as a result of this deficiency, he was prejudiced at trial. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693; *State v. Mills* (1992), 62 Ohio St.3d 357, 370, 582 N.E.2d 972, 984–985. Prejudice will be found only if the defendant proves that there is a reasonable possibility that, but for the unprofessional errors, the result of the proceedings against the defendant would have been different. There must be a probability sufficient to undermine confidence in the outcome of the case. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus. Any questions regarding the effectiveness of counsel must be viewed in light of the evidence against the defendant, *id.* at 142, 538 N.E.2d at 379–380, with a "strong presumption that counsel's conduct falls within the wide range of professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694; *Lytle,* 48 Ohio St.2d at 397, 2 O.O.3d at 498, 358 N.E.2d at 627.

The decision on whether to request a specific jury instruction on a lesser offense is a matter of trial strategy left to counsel's discretion. *State v. Griffie* (1996), 74 Ohio St.3d 332, 333, 658 N.E.2d 764, 765–766. Thus, the defendant must overcome the presumption that, under the circumstances, the challenged action of trial counsel might be considered sound trial strategy. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. Hindsight may not be used to distort the assessment of what was reasonable in light of trial counsel's perspective at the time. *State v. Cook* (1992), 65 Ohio St.3d 516, 524–525, 605 N.E.2d 70, 80–81.

Aggravated assault, as defined by R.C. 2903.12(A)(2), is not a lesser included offense of felonious assault. *State v. Deem* (1988), 40 Ohio St.3d 205, 210, 533 N.E.2d 294, 295. Instead, aggravated assault is an inferior degree of felonious assault, because the elements of aggravated assault are identical to those of felonious assault, except for aggravated assault's additional mitigating element of serious provocation. *State v. Mack* (1998), 82 Ohio St.3d 198, 200, 694 N.E.2d 1328, 1330–1331.

"Provocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force. In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time." *Deem,* paragraph five of the syllabus.

This provocation must be occasioned by the victim. *State v. Shane* (1992), 63 Ohio St.3d 630, 637, 590 N.E.2d 272, 278. Thus, in a trial for felonious

assault, an instruction on aggravated assault must be given to the jury when the defendant has presented sufficient evidence of serious provocation. *Deem,* paragraph four of the syllabus.

In determining whether the defendant presented sufficient evidence to warrant an instruction on the lesser degree offense of aggravated assault, "an objective standard must be applied to determine whether the alleged provocation is reasonably sufficient to bring on a sudden passion or fit of rage." *Mack,* 82 Ohio St.3d at 201, 694 N.E.2d at 1331. The provocation must be "sufficient to arouse the passions of an ordinary person beyond the power of his or her control." *Shane,* 63 Ohio St.3d at 635, 590 N.E.2d at 276. If this objective standard is met, the inquiry becomes a subjective one, to determine whether the defendant "actually was under the influence of sudden passion or in a sudden fit of rage." *Id.*

As applied in this case, we find that the evidence was insufficient, as a matter of law, to establish provocation reasonably sufficient to incite the use of deadly force. The evidence presented at trial established that appellant was the first person to pull out a weapon. Appellant was also the first person to point his weapon at another. According to the testimony of Gates, appellant was the first person to fire his weapon. This evidence established that appellant fired his weapon without provocation by the officers. Even if the jury were to believe appellant's contention that Gates fired first, Gates did so only in response to the threat posed by appellant pointing a gun at the officers.

The evidence established that it was appellant, not the officers, who instigated the shoot-out. Therefore, appellant's trial counsel was not ineffective for failing to request a jury instruction on aggravated assault.

Sub–Assignment of Error No. 4(B):

"Appellant was denied a fair trial and effective assistance of counsel, where trial counsel failed to object to the introduction of state's exhibits and failed to object at any time during the proceeding to the physical presence of the exhibits in the courtroom during the trial."

Sub–Assignment of Error No. 4(C):

"Appellant was denied a fair trial and the effective assistance of counsel, where trial counsel failed to object to improper testimony on multiple occasions."

Appellant contends that his trial counsel was ineffective for failing to object to evidence and testimony presented at trial. The challenged evidence consisted of ammunition, weapons, body armor, and other munitions found in the Suburban. The challenged testimony includes Johnson's testimony discussed in appellant's

third assignment of error, as well as testimony by Harker, appellant, and a defense witness.

Any questions regarding the effectiveness of counsel must be viewed in light of the evidence against the defendant, *Bradley*, 42 Ohio St.3d at 142, 538 N.E.2d at 379, with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694; *Lytle*, 48 Ohio St.2d at 397, 2 O.O.3d at 498, 358 N.E.2d at 627. It is not the role of the appellate court to second-guess the strategic decisions of trial counsel. *Carter*, 72 Ohio St.3d at 558, 651 N.E.2d at 977. This is especially so in the case of motions and objections, where counsel is not obligated to make motions or objections that are without merit. See *State v. Lott* (1990), 51 Ohio St.3d 160, 175–176, 555 N.E.2d 293, 308–309.

Appellant first challenges testimony presented by Johnson concerning his review of the videotape and other evidence, and his interpretation, as a law enforcement officer, of appellant's actions. As noted above, there was nothing improper in Johnson's testimony, save one instance where he testified as to improper hearsay. Nonetheless, as decided above, this one instance of improper testimony was not sufficient to undermine appellant's rights. Thus, appellant's trial counsel was not ineffective for not objecting to this testimony.

Appellant asserts that Harker was allowed to testify about what he saw when viewing the videotape and to describe the events on the videotape to the jury. For the reasons that we found Johnson's testimony properly admitted pursuant to Evid.R. 701, we also find that Harker's testimony was properly admitted. He testified as a lay witness who had personal knowledge of the events on the videotape. Harker testified as to what he perceived on the videotape, how those events related to his own memory, and how he interpreted those events as a police officer with twenty-six years of experience. Therefore, he was allowed to testify that he interpreted appellant's actions as evincing an intent to kill.

Appellant argues that trial counsel should have objected to the introduction into evidence of videotapes, weapons, body armor, and other materials found in the Suburban, as well as testimony concerning weapons and ammunition found on Chevie's person. Appellant asserts that this evidence was irrelevant to the charges against him. We disagree. The videotapes, weapons, and other materials found were relevant to establishing the totality of the circumstances surrounding appellant's crimes. Furthermore, this evidence and the fact that appellant was a willing passenger in a vehicle filled with such materials were relevant to demonstrating appellant's state of mind at the time of the shoot-out.

Trial counsel's failure to object to this testimony could have been a strategy to show the dangerous propensities of Chevie, an argument advanced by appellant at trial. Where trial tactics prove unsuccessful, appellant is not allowed to later claim that such tactics were inappropriate. See *Carter*, 72 Ohio St.3d at 558, 651 N.E.2d at 977. It is not for this court to second-guess such decisions. Therefore, we find that the trial counsel was not ineffective for not objecting to this evidence and testimony.

Appellant claims that trial counsel should have objected to cross-examination testimony of appellant and Paul Kardish, Special Agent for the Federal Bureau of Investigation. Appellant was questioned about murders that Chevie had participated in and admitted that some of the exhibits introduced at trial were used in the murders. Kardish testified that many of the items seized from the Suburban are commonly used in domestic terrorism. Appellant claims that such testimony was irrelevant and introduced as improper character evidence and that trial counsel should have objected to the testimony. We find that appellant's contention is without merit.

Appellant claimed at trial that Chevie was a dangerous man and that appellant was not a willing participant in the events surrounding the shoot-out. Appellant first introduced evidence and testimony of Chevie's dangerous propensities. In fact, that was one reason behind appellant's decision to call Kardish to testify. Appellant first introduced the topic of Chevie's violent nature, and the state was allowed to cross-examine appellant and his witnesses to demonstrate that, regardless of Chevie's violence, appellant was a knowing and willing participant in the shoot-out. See *State v. Wilson* (1996), 74 Ohio St.3d 381, 398, 659 N.E.2d 292, 308–309. Therefore, trial counsel was not ineffective for not objecting to this cross-examination testimony.

Appellant argues that trial counsel should have objected to statements made by the prosecutor during closing argument. Appellant first asserts that there was no evidence substantiating the prosecutor's statement that appellant shot at Harker. Appellant also asserts that the state attempted to alter the elements of felonious assault in its closing arguments.

We find that appellant's first contention is without merit. Gates testified that appellant shot at Harker from inside the Suburban. Other testimony established that evidence at the crime scene was consistent with this statement. Therefore, trial counsel would have had no basis for objecting to the prosecutor's statement that appellant shot at Harker.

Appellant also claims that trial counsel should have objected to an alleged attempt by the state to alter the elements of the charged crime. In closing arguments, the prosecutor explained to the jury that a felonious assault

occurs when a loaded weapon is pointed at an individual and the individual feels threatened. Although appellant is correct that this statement does not accurately reflect the elements of felonious assault, this was only one short statement in the closing argument. Where the statement is short, oblique, and elicits no contemporaneous objection, there is no prejudicial error. *Lott,* 51 Ohio St.3d at 166, 555 N.E.2d at 300–301. Furthermore, the trial court's jury instructions informed the jury as to the elements of felonious assault and that counsel's arguments were not controlling. Such clear admonitions by the court remedied any detriment caused by a single misstatement by the prosecutor. See *State v. Maurer* (1984), 15 Ohio St.3d 239, 269, 15 OBR 379, 404–405, 473 N.E.2d 768, 794–795. Thus, trial counsel's failure to object did not prejudice appellant's rights.

Appellant's last challenge to trial counsel's effectiveness concerns an alleged failure to object to the jury instruction appellant challenged above in his seventh assignment of error. As pointed out above, the challenged instruction on felonious assault was a verbatim reading of the syllabus in *State v. Green* (1991), 58 Ohio St.3d 239, 569 N.E.2d 1038, which appellant cited as controlling precedent in his first assignment of error. As discussed above, the challenged jury instruction was proper, and the jury instructions, as a whole, fully informed the jury of the elements of felonious assault. Thus, there was no need for trial counsel to object to the contested jury instruction.

Therefore, we find that appellant's trial counsel was not ineffective, and appellant's right to a fair trial was not adversely affected. Accordingly, appellant's fourth assignment of error is overruled.

Assignment of Error No. 6:

"The trial court abused its discretion in sentencing appellant to consecutive prison terms regarding the underlying felony convictions."

In his sixth assignment of error, appellant contends that the trial court did not make the findings required by R.C. 2929.14(E)(3) before consecutive sentences may be imposed. Based upon this contention, appellant asserts that he should have been sentenced to concurrent terms of imprisonment, not consecutive terms of imprisonment.

An appellate court may not disturb a sentence imposed under Senate Bill 2 unless it finds by clear and convincing evidence that the sentence is not supported by the record or is contrary to law. R.C. 2952.08(G)(1). Clear and convincing evidence is that evidence that "will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford* (1954), 161 Ohio St. 469, 53 O.O. 361, 120 N.E.2d 118, paragraph three of the syllabus. The sentence imposed must be consistent with the overriding purposes

of felony sentencing: "to protect the public from future crime by the offender," and "to punish the offender." R.C. 2929.11(A).

The sentencing court is given wide discretion in determining the most effective way to comply with the purposes and principles of Senate Bill 2. "[A] reviewing court will not interfere with the sentence unless the trial court abused its discretion." *State v. Yontz* (1986), 33 Ohio App.3d 342, 343, 515 N.E.2d 1012, 1014. Generally, a trial court does not abuse its discretion when imposing a sentence that is authorized by statute. *State v. Beasley* (1984), 14 Ohio St.3d 74, 75, 14 OBR 511, 512, 471 N.E.2d 774, 774–775. Thus, we must determine whether the trial court made the findings required by R.C. 2929.14(E)(3).[2]

This court's review of the trial court's judgment entry reveals that the trial court did find that consecutive sentences were necessary to protect the public and to punish appellant. The trial court also found that consecutive sentences were not disproportionate to the seriousness of appellant's conduct and the danger posed to the public. Thus, the initial requirement of R.C. 2929.14(E)(3) was satisfied. Additionally, the trial court found that the harm posed by appellant's offenses to the officers and public was so great that a single prison term would not adequately reflect the seriousness of appellant's conduct with regard to these offenses. R.C. 2929.14(E)(3)(b).

Upon thorough review and consideration of the trial record, we find that the trial court did not abuse its discretion in sentencing appellant to consecutive prison terms. There is no evidence that the trial court failed to properly consider the required sentencing factor, and we find that the trial court's judgment is supported by the evidence and within statutory guidelines. Accordingly, appellant's sixth assignment of error is overruled.

---

2. R.C. 2929.14(E)(3) (now [E][4]) provided:

"If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

"(a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

"(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.

"(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."

Assignment of Error No. 5:

"The trial court erred when it sentenced appellant to two consecutive terms of actual incarceration on two separate gun specifications under two separate counts in the indictment, where the criminal conduct giving rise to said sentence was committed as part of the same act or transaction."

In his fifth assignment of error, appellant contends that the trial court erred by sentencing him to two consecutive sentences of three years' actual incarceration on the gun specifications for which appellant was found guilty. Appellant asserts that his crimes were committed as part of a single act or transaction and that he should have been sentenced on only one gun specification charge.

We review the decision of the trial court to impose consecutive sentences on the gun specification charges for an abuse of discretion. *Yontz*, 33 Ohio App.3d at 343, 515 N.E.2d at 1013–1014. In imposing sentence, the trial court must adhere to the mandates of the relevant sentencing statute. *Beasley*, 14 Ohio St.3d at 75, 14 OBR at 512, 471 N.E.2d at 774–775.

R.C. 2929.14(D)(1)(a)(i) provides:

"Except as provided in division (D)(1)(b) of this section, if an offender who is convicted of or pleads guilty to a felony also is convicted of or pleads guilty to a specification of the type described in * * * section 2941.145 of the Revised Code that charges the offender with having a firearm on or about the offender's person or under the offender's control while committing the offense * * * or using it to facilitate the offense, * * * the court, after imposing a prison term on the offender for the felony * * * shall impose an additional prison term, determined pursuant to this division. * * * If the specification is of the type described in section 2941.145 of the Revised Code, the additional prison term shall be three years. * * * *A court shall not impose more than one additional prison term on the offender under this division for felonies committed as part of the same act or transaction.*" (Emphasis added.)

"Transaction," as used in the gun specification statutes, is defined as "a series of continuous acts bound together by time, space, and purpose, and directed toward a single objective." *State v. Wills* (1994), 69 Ohio St.3d 690, 691, 635 N.E.2d 370, 371.

Upon a thorough review of the record, we find that the trial court did not err in sentencing appellant to two consecutive three-year terms of imprisonment on the gun specification charges. Appellant's conduct in the shoot-out did not constitute a single act or transaction. Appellant first attempted to shoot Harker

from inside the Suburban. Appellant then exited the Suburban in a shooting stance and attempted to shoot Gates.

Furthermore, appellant's crimes were committed against two different victims, which may be the basis for imposing consecutive firearm specification sentences. See *State v. Ayala* (1996), 111 Ohio App.3d 627, 632, 676 N.E.2d 1201. After first firing at Tpr. Harker, nothing required that appellant then fire at Dep. Gates. One may commit a crime against one victim, and then surrender to pursuing officers. When the assailant refuses to do so and, instead, fires upon the pursuing officers, that is a separate offense. See *State v. White* (1991), 71 Ohio App.3d 550, 555–556, 594 N.E.2d 1087, 1090–1091.

Appellant's actions in the instant case mirrored those of the defendant in *White*, who broke into another's home and, following the commission of this burglary, shot at investigating officers. The court found that "[a]lthough both offenses were committed in sequence and in close proximity to one another, they did not necessarily arise from a common objective." *Id.* Similarly, appellant's actions evinced one animus towards Harker and a separate animus towards Gates. Appellant was required to exit the vehicle and adopt a shooting stance before he was able to shoot at Gates. Appellant "should serve no less time because of the coincidental proximity of his two victims." *Wills,* 69 Ohio St.3d at 691, 635 N.E.2d at 371. Although these events took place seconds apart, and within the same general space, appellant's actions clearly demonstrated a separate animus toward each victim.

Therefore, we find that appellant was properly sentenced to consecutive sentences for the gun specification convictions. Accordingly, appellant's fifth assignment of error is overruled.

*Judgment affirmed.*

POWELL, P.J., and VALEN, J., concur.