OPINION
{¶ 1} Defendant-appellant, Jerome Brooks, appeals from a Mahoning County Common Pleas Court judgment convicting him of felonious assault with a firearm specification, following a jury trial and the sentence that followed.
 {¶ 2} During the afternoon of August 9, 2002, Robert Bell went to the Augusta Market in Youngstown with his ex-wife. While he was there, he ran into appellant. Bell and appellant were acquaintances and both frequented the Augusta Market. Appellant told Bell to tell his ex-girlfriend, Tomika Gulley, that he wanted to see his baby. Specifically, appellant told Bell, "`Tell that bitch I want to see my baby.'" (Tr. 24). Apparently, Bell and Miss Gulley had been spending some time together. Appellant and Bell exchanged words. While Bell was outside in his car, appellant pulled up to the side of Bell's car and showed him a sawed-off shotgun. Appellant then repeated, "You hear what I said? I told you, `Tell that bitch I want to see my baby.'" (Tr. 24-25). Bell told appellant he better leave. Appellant then drove away and Bell followed after him. However, Bell's ex-wife told him she did not have time for these antics, so he stopped following appellant.
 {¶ 3} Later that day, around 7:30 or 8:00, Bell returned to the Augusta Market. He was discussing the earlier incident with appellant's father when appellant pulled up to the store. According to Bell, appellant got out of his car and began running toward him while trying to cock his shotgun. Bell stated that his car was running, so he got in and threw it in reverse. He was backing down the street when appellant fired the shotgun and hit his windshield. Appellant then drove away and Bell went back in the store to call 911. Bell was not injured as a result of the shooting.
 {¶ 4} Officers who inspected Bell's car testified that the shooting shattered the windshield and left a pattern on the glass consistent with shotgun pellets hitting it.
 {¶ 5} A Mahoning County grand jury indicted appellant on one count of felonious assault, a second-degree felony in violation of R.C. 2903.11(A)(2)(D), with a firearm specification in violation of R.C. 2941.145(A). Appellant proceeded to a jury trial on November 12, 2002. The jury found appellant guilty as charged. The trial court entered judgment on the verdict and sentenced appellant to eight years for the felonious assault conviction and three years for the firearm specification to be served consecutively. Appellant filed his timely notice of appeal on December 30, 2002.
 {¶ 6} Appellant raises two assignments of error, the first of which states:
 {¶ 7} "Appellant was denied due process and the liberties protected by ohio const. art. I § 1, 2, 10 and 16 because his conviction for felonious assault and the accompanying firearm specification is against the manifest weight of the evidence."
 {¶ 8} Appellant argues that the jury's verdict was against the manifest weight of the evidence for several reasons. First, he notes that Bell testified that he was not physically injured and was only momentarily scared. (Tr. 35, 38). Appellant contends that plaintiff-appellee, the State of Ohio, presented no evidence that he caused or attempted to cause physical harm to Bell. He further contends that appellee failed to prove that he had the criminal intent to harm Bell. Next, appellant asserts that the act of pointing a deadly weapon at another, without additional evidence, is insufficient to convict someone for felonious assault. Citing, State v. Brooks (1989), 44 Ohio St.3d 185. Appellant claims that the only evidence presented was that he pointed a weapon and shot at Bell's windshield. He argues that this evidence was insufficient to show that he caused or attempted to cause physical harm to Bell. Finally, appellant argues that appellee did not produce any evidence that the weapon he used was a "deadly" weapon. Citing, State v. Brown (1995),101 Ohio App.3d 784 (holding that the State did not establish that the BB gun used was a deadly weapon, as required for a felonious assault conviction).
 {¶ 9} Although stated in terms of the manifest weight of the evidence, appellant's arguments actually attack the sufficiency of the evidence. We will proceed accordingly.
 {¶ 10} Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict. State v. Smith (1997),80 Ohio St.3d 89, 113. In essence, sufficiency is a test of adequacy. State v.Thompkins (1997), 78 Ohio St.3d 380, 386. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Smith, 80 Ohio St.3d at 113.
 {¶ 11} Appellant was convicted of violating R.C.2903.11(A)(2), which provides:
 {¶ 12} "(A) No person shall knowingly do either of the following:
 {¶ 13} "* * *
 {¶ 14} (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."
 {¶ 15} Appellant was also convicted of a firearm specification.
 {¶ 16} Nowhere in R.C. 2903.11(A)(2) is it required that the offender actually cause physical harm to the victim as appellant first alleges. It is sufficient that the offender "attempt[ed] to cause physical harm to another." Thus, this argument fails.
 {¶ 17} Next, appellant contends that Brooks,44 Ohio St.3d 185, supports the reversal of his conviction. In Brooks, the Ohio Supreme Court held, "[t]he act of pointing a deadly weapon at another, without additional evidence regarding the actor's intention, is insufficient evidence to convict a defendant of the offense of `felonious assault' as defined by R.C. 2903.11(A)(2)."Brooks, 44 Ohio St.3d at the syllabus. The facts in Brooks
involved the defendant pointing a gun at a barmaid and threatening to kill her. The defendant did not fire the gun at the barmaid and subsequently left the bar. In analyzing whether the jury could have reasonably concluded appellant committed felonious assault the court noted, "[i]n this case, there would be little doubt that a reasonable jury could convict the defendant of felonious assault if he had pointed his revolver at Barker and either fired or attempted to discharge his weapon in her direction." Id. at 192.
 {¶ 18} Given the Brooks court's statement, it is clear that appellant's act of pointing a shotgun at Bell and firing it
constitutes the "attempt to cause physical harm to another" element of felonious assault. Appellant went one step beyond pointing a weapon at Bell. He pulled the trigger. And the bullets hit Bell's driver's side windshield while Bell was seated in the driver's position. Luckily for Bell, the shotgun bullets did not break through his windshield.
 {¶ 19} Next, appellant contends that appellee failed to prove he had the criminal intent to cause physical harm to Bell. As appellee notes, in State v. Kehoe (1999), 133 Ohio App.3d 591, the Twelfth District upheld the defendant's conviction for felonious assault in a similar situation. During a traffic stop, the defendant fired a weapon at a police officer from inside his vehicle through a window. The window was apparently closed, as the shots and the return shots from the officer shattered the window. In reviewing the case on sufficiency of the evidence grounds, the court noted that the defendant's actions were strongly corroborative of an intent to cause physical harm. Id. at 600. It noted that most important was the testimony that the defendant fired at the officer from inside of the vehicle. Id. It stated that this fact, by itself, was sufficient to support the defendant's conviction for felonious assault. Id. In this matter, in addition to the shot appellant fired at Bell, the evidence also demonstrated that the two had exchanged words earlier that day and that appellant had threatened Bell by showing him the shotgun. Thus, it was reasonable for the jury to conclude that appellant intended to cause physical harm to Bell.
 {¶ 20} Finally, appellant claims that appellee failed to prove that he used a "deadly weapon." He points our attention toBrown, 101 Ohio App.3d 784. In Brown, the First District found that the BB gun in that particular case was not a "deadly weapon" within the meaning of the felonious assault statute. It noted that in some cases, such as where the BB gun would be used as a bludgeon or where it was powerful enough to inflict death, a BB gun could be a deadly weapon. Id. at 788. However, in the case before it, the court concluded that the particular BB gun was not capable of causing death. The court noted there was no evidence that the BB gun was ever used or threatened to be used as a bludgeon. Id. It also noted there was no evidence concerning the particular BB gun's capability of inflicting death. Id. at 789.
 {¶ 21} This matter, however, is distinguishable. Although there was some talk about "BBs" being fired from appellant's weapon, there was no testimony that appellant fired a BB gun at Bell. Both Bell and Stanley Potkay, a truck driver who happened to witness the shooting, saw the gun appellant fired and identified it as a sawed-off shotgun. (Tr. 35-36, 96). And Officers Erin Coleman, Robert Mauldin, and Detective Sergeant Pat Kelly, all inspected Bell's car after the shooting. Officer Coleman described the damage to the windshield as damages caused by "BBs from a rifle." (Tr. 162). Officer Mauldin described the window as being damaged by "pellet shots" as "if it was shot by a shotgun of some kind." (Tr. 189). Detective Kelly, in explaining what he saw on the windshield stated, "I saw a shotgun pattern. If I was to fire my duty weapon, it would be one single shot or how many times I would fire the trigger than how many bullet holes it would be. The shotgun blast is one time or pellets or BBs, if you want to call it. You are going to have just a bunch of those in a pattern like that probably." (Tr. 205-206). Thus, the testimony demonstrated that appellant fired a shotgun at Bell. Furthermore, as appellee points out, Brown noted that whether a weapon is capable of inflicting death is a factual issue to be determined by the trier of fact. Id. at 788.
 {¶ 22} Appellant's shotgun may qualify as either a "deadly weapon" or a "dangerous ordnance." A "deadly weapon" is "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11(A). A "dangerous ordnance" includes "[a]ny automatic or sawed-off firearm, zip-gun, or ballistic knife." R.C. 2923.11(K)(1).
 {¶ 23} There was no dispute among the witnesses that appellant fired a sawed-off shotgun. A "sawed-off firearm" is "a shotgun with a barrel less than eighteen inches long, or a rifle with a barrel less than sixteen inches long, or a shotgun or rifle less than twenty-six inches long overall." R.C. 2923.11(F). However, there was no testimony as to how long appellant's shotgun was.
 {¶ 24} A "firearm" is "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant." R.C. 2923.11(B)(1). "When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm." R.C. 2923.11(B)(2). The testimony supports the conclusion that appellant's weapon was a "firearm." Bell testified that when appellant fired the shotgun, smoke came out of the gun. (Tr. 90). Potkay testified that the gun made a blast and that he saw a little bit of fire and smoke come out the end of the barrel. (Tr. 98). Fred Esmail, the owner of the Augusta Market, was inside the store when he heard a "big boom." (Tr. 110). And Patricia Williams, who lived down the street from the Augusta Market, testified that she heard the shot, which sounded like a "real ka-boom." (Tr. 140). Furthermore, as discussed above, the officers involved testified as to the shotgun pattern on Bell's windshield. This testimony reasonably leads to the conclusion that appellant's shotgun was a "firearm" within the definition of R.C. 2923.11(B)(1).
 {¶ 25} And at least one court has held that "when a witness testifies that pistols, rifles, and shotguns are in `good operating condition' that this is sufficient to prove that they were deadly weapons `capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant.'" State v. Coffindaffer (Feb. 4, 1983), 5th Dist. No. CA-2088. While there was testimony that only one of the two chambers of appellant's shotgun worked, the shotgun was still in good operating condition as appellant had no problem firing it at Bell.
 {¶ 26} Thus, sufficient evidence exists so that a rational trier of fact could have found the essential elements of felonious assault proven beyond a reasonable doubt. Accordingly, appellant's first assignment of error is without merit.
 {¶ 27} Appellant's second assignment of error states:
 {¶ 28} "The trial court erred by imposing the maximum sentence upon appellant and by failing to state in the record the requisite findings pursuant to ohio revised code 2929.14(c) and2929.19(b)."
 {¶ 29} Appellant contends that the court failed to make the findings necessary to sentence him to a maximum term of imprisonment. Specifically, he asserts the court did not comply with R.C. 2929.14(C) and R.C. 2929.19(B)(2)(e).
 {¶ 30} Felonious assault is a second-degree felony and carries with it a possible prison sentence of two, three, four, five, six, seven, or eight years. R.C. 2929.14(A)(2). The trial court sentenced appellant to the maximum eight years for felonious assault.
 {¶ 31} Except as otherwise provided, "the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders * * *, and upon certain repeat violent offenders * * *." R.C.2929.14(C).
 {¶ 32} In State v. Higgenbotham (Mar. 21, 2000), 7th Dist. No. 97-BA-70, we stated:
 {¶ 33} "As to R.C. 2929.14(C), the [Ohio Supreme Court inState v. Edmonson (1999), 86 Ohio St.3d 324] held that a trial court must record a finding that the defendant fits into one of the categories of offenders listed in the statute section. Id. at 329. While the court again need not itemize its reasons for reaching the conclusion, it must still specify its finding in the record. Id. Statements by a trial court which may impliedly demonstrate that the court made the requisite finding pursuant to R.C. 2929.14(C) are not sufficient."
 {¶ 34} At the sentencing hearing the court stated:
 {¶ 35} "The shortest term is to be imposed if the defendant has not been sentenced to prison before. Well, he has been. The longest term can be imposed only if one of the following is found: The offender committed the worst form of the offense, the offender poses the greatest likelihood of committing future crimes. The Court finds both." (Sentencing Tr. 15).
 {¶ 36} Hence, the court made the necessary R.C. 2929.14(C) finding on the record at the sentencing hearing.
 {¶ 37} Appellant contends that the trial court's findings did not warrant a conclusion that he committed the worst form of the offense or that he posed the greatest likelihood of committing future crimes. However, the record demonstrates otherwise.
 {¶ 38} As to the worst form of the offense, the court found:
 {¶ 39} "I listened to a trial and learned the facts of this case to be that this defendant walked up to the victim's automobile and fired a sawed off shotgun into the driver's side windshield while the victim was sitting in that position behind the wheel, and it appears to the Court in an obvious attempt to kill the victim." (Sentencing Tr. 11-12).
 {¶ 40} It further found that:
 {¶ 41} "The Court finds that the defendant's conduct in this case is as serious a conduct as anyone can engage in, arming himself, planning to go out and shoot someone because of a domestic disagreement or because of some rivalry over the affections of a woman, walking down the street in the middle of broad daylight and walking up to this guy's car and pulling the trigger of a sawed off shotgun." (Sentencing Tr. 14).
 {¶ 42} Appellant contends that because Bell did not suffer any physical harm, the record does not support the court's findings that this was the worst form of the offense. But whether or not appellant committed the worst form of the offense, the trial court made sufficient findings to support its determination that appellant poses the greatest likelihood of committing future crimes. The court specifically found:
 {¶ 43} "The defendant possesses a significant prior juvenile record and then adult criminal record that begins in 1977, one full page of records in the seventies and in the early eighties, another page of a record and then mid and late eighties another page of criminal offenses ending and then early nineties you had another full page of criminal offenses and in the middle nineties another full page of criminal offenses, and these seem to proceed in their degree of seriousness. * * *. The defendant apparently has previously served time in the penitentiary. He's a multistate offender, committed crimes in Chicago Heights, St. Petersburg, Florida, obviously Youngstown, Ohio." (Sentencing Tr. 12-13).
 {¶ 44} The court further found:
 {¶ 45} "Factors indicating recidivism is more likely. The offender has a history of criminal convictions, juvenile delinquency adjudications. He has not responded favorably to sanctions previously imposed. He shows no remorse whatsoever. There is absolutely nothing to indicate that recidivism is less likely." (Sentencing Tr. 14-15).
 {¶ 46} Thus, the court listed a litany of reasons why appellant posed the greatest likelihood of committing future crimes.
 {¶ 47} Appellant also contends the court was required to comply with R.C. 2929.19(B)(2)(e), which provides:
 {¶ 48} "(2) The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances:
 {¶ 49} "* * *
 {¶ 50} "(e) If the sentence is for two or more offenses arising out of a single incident and it imposes a prison term for those offenses that is the maximum prison term allowed for the offense of the highest degree by division (A) of section 2929.14
of the Revised Code, its reasons for imposing the maximum prison term."
 {¶ 51} This section does not apply to appellant's sentence. The court did not sentence appellant for two or more offense arising out of a single incident. Appellant was convicted of one offense, felonious assault, with one firearm specification. The specification was not another offense. That said, as set out above, the trial court gave many reasons for sentencing appellant to the maximum prison term including his lengthy criminal record, his lack of remorse, and the seriousness of his actions.
 {¶ 52} Accordingly, appellant's second assignment of error is without merit.
 {¶ 53} For the reasons stated above, the trial court's decision is hereby affirmed.
Vukovich, J., concurs.
Waite, P.J., concurs.