[Cite as *Wittensoldner v. Ohio Dept. of Transp.*, 2013-Ohio-5303.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Robert Wittensoldner et al.,                           :

        Plaintiffs-Appellants,              :              No. 13AP-475
                                          (Ct. of Cl. No. 2011-05823)
v.                                                     :

                                            (ACCELERATED CALENDAR)
Ohio Department of Transportation,             :

        Defendant-Appellee.                 :

D E C I S I O N

Rendered on December 3, 2013

*Martin F. White Co., L.P.A., Martin F. White*, and *James J. Crisan*, for appellants.

*Michael DeWine*, Attorney General, *Velda K. Hofacker*, and *Stephanie Pestello-Sharf*, for appellee.

APPEAL from the Court of Claims of Ohio.

BROWN, J.

{¶ 1} Robert (individually "appellant") and Tara Wittensoldner, plaintiffs-appellants, appeal the judgment of the Court of Claims of Ohio, in which the court granted the motion for summary judgment filed by the Ohio Department of Transportation ("ODOT"), defendant-appellee.

{¶ 2} On September 3, 2010, Martin Baker, a signal electrician 1 for ODOT, received a phone call informing him that the traffic lights, which ODOT calls "signal heads," at an intersection in Green Township, Ohio, were hanging low. Baker and a co-worker, Dan Whitaker, drove a bucket truck to the intersection. Eight signal heads were hanging low enough to obstruct truck traffic. The signal heads are supported between poles by a steel cable, which ODOT calls a signal "span wire." Baker raised himself in the

bucket of the truck and tried to raise the cable but failed. He spoke on the phone to a co-worker, Darryl Brosius, a signal electrician 2, who told him that it sounded like the span wire was broken somewhere along its length. After inspection, Baker found the span wire had been burned by an electric wire that crossed over it. Baker attached two cable grips, which clamp onto the ends of the severed span wire, and used a "come-along," which is a ratcheting crank winch to pull the ends of the severed wire together. Baker then spliced a new piece of cable between the two severed ends and secured the new cable to the severed cable with a "three-bolt clamp" on each end. He removed the come-along and cable grips. The repair was meant to be temporary until a new span wire could be installed.

{¶ 3} Approximately five weeks later, on October 7, 2010, Brosius went to the intersection to inspect the area and prepare the span wire for replacement later that night. The span wire was lashed to the electrical wires that supplied power to the signal heads. Brosius raised himself in his bucket on his truck and unlashed as much of the electrical signal wires from the span wire as he could reach. After returning to his truck, he heard a loud noise and saw that all eight signal heads had fallen to a height of approximately six feet above the ground. Brosius believed that one of the three-bolt clamps that Baker had used to repair the severed cable had detached.

{¶ 4} Appellant arrived at the scene to direct traffic. When he arrived, Brosius was up in the bucket, and appellant directed traffic around the wires. Brosius attached a cable grip to each end of the severed signal wire, attached a come-along to the grips, and began raising the signal wire. On the ground, Brosius measured the signal heads to be 14 feet from the ground. Brosius returned to his bucket to raise the signal heads another two feet to the standard height of 16 feet.

{¶ 5} As Brosius began cranking the come-along, the signal heads fell. One signal head struck the window of a passing truck. The signal head bounced off the truck and struck appellant in the head, injuring appellant.

{¶ 6} Approximately one week after appellant was injured, Brosius noticed that one of the same cable grips used during the October 7, 2010 incident slipped while he was raising signal heads at another site. The following morning, Brosius tested the same cable grip by stringing a cable between two raised truck buckets. He saw the cable grip was slipping, and that cable grip was removed from service. Brosius concluded that the span wire collapsed on October 7, 2010 due to the faulty cable grip.

{¶ 7}   On April 11, 2011, appellant and Tara, his wife, filed a complaint against ODOT in the Court of Claims, alleging negligence and loss of consortium. On March 18, 2013, ODOT filed a motion for summary judgment. On May 28, 2013, the Court of Claims granted ODOT's motion for summary judgment. Appellants appeal the judgment of the trial court, asserting the following assignment of error:

THE COURT OF CLAIMS ERRED BY GRANTING ODOT'S
MOTION FOR SUMMARY JUDGMENT.

{¶ 8}   Appellants argue in their assignment of error that the trial court erred when it granted summary judgment in favor of ODOT. Summary judgment is appropriate when the moving party demonstrates that: (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion when viewing the evidence most strongly in favor of the non-moving party, and that conclusion is adverse to the non-moving party. *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, ¶ 29; *Sinnott v. Aqua–Chem, Inc.*, 116 Ohio St.3d 158, 2007-Ohio-5584, ¶ 29. Appellate review of a trial court's ruling on a motion for summary judgment is de novo. *Hudson* at ¶ 29. This means that an appellate court conducts an independent review, without deference to the trial court's determination. *White v. Westfall*, 183 Ohio App.3d 807, 2009-Ohio-4490, ¶ 6 (10th Dist.); *Zurz v. 770 W. Broad AGA, L.L.C.*, 192 Ohio App.3d 521, 2011-Ohio-832, ¶ 5 (10th Dist.).

{¶ 9}   When seeking summary judgment on the ground that the non-moving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the non-moving party's claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The moving party does not discharge this initial burden under Civ.R. 56 by simply making a conclusory allegation that the non-moving party has no evidence to prove its case. *Id*. Rather, the moving party must affirmatively demonstrate by affidavit or other evidence allowed by Civ.R. 56(C) that the non-moving party has no evidence to support its claims. *Id*. If the moving party meets its burden, then the non-moving party has a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial. Civ.R.

56(E); *Dresher* at 293. If the non-moving party does not so respond, summary judgment, if appropriate, shall be entered against the non-moving party. *Id.*

{¶ 10} In the present case, appellants' claims sound in negligence. To recover on a negligence claim, a plaintiff must prove that: (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, and (3) the breach of the duty proximately caused the plaintiff's injury. *Wallace v. Ohio Dept. of Commerce*, 96 Ohio St.3d 266, 2002-Ohio-4210, ¶ 22. The duty element of a negligence claim may be established by common law, legislative enactment, or the particular circumstances of a given case. *Id.* at ¶ 23.

{¶ 11} In finding ODOT was not negligent here, the trial court found the following: (1) Brosius's testimony regarding the accident being caused by the malfunctioning cable grip was admissible opinion testimony by a lay witness because it was rationally based on his personal observations and perceptions and is helpful to a clear understanding of a fact in issue, (2) res ipsa loquitur did not apply because Brosius's undisputed testimony constituted evidence tending to show that the cause of the accident was something other than negligence on the part of ODOT; that is, the result of a manufacturing or design defect with the cable grip and not due to ODOT's breach of duty, and (3) because ODOT presented evidence tending to show that the accident resulted from a cause other than its negligence, appellant failed to present evidence of acts or omissions on the part of ODOT from which a reasonable trier of fact could conclude that ODOT caused the accident.

{¶ 12} Appellants first argue that the opinion testimony of Brosius was inadmissible. Appellants contend that Brosius's testimony regarding his "test" of the cable grip was that of an expert witness as it pertained to matters beyond the knowledge or experience possessed by laypersons pursuant to Evid.R. 702(A). Appellants maintain that Brosius's opinion was not based on accurate, verifiable facts because he did not see what caused the signals to collapse and did not see which of the two grips, if either, had failed, and it was pure conjecture that the same cable grip that he saw slip during his test also slipped on October 7, 2010. Appellants suggest that the cable grip could have been damaged on October 7, 2010. Appellants point out that the signal heads had collapsed at least twice before when no grips were being employed; thus, something other than a faulty grip may have caused the collapse that injured appellant.

{¶ 13} Brosius was not recognized as an expert during the trial, thus, his testimony and opinion are admissible only if they constituted proper lay witness testimony. Evid.R. 701 relates to lay witness testimony and provides as follows:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue

Evid.R. 701 gives trial courts wide discretion in allowing lay witness opinion testimony. *State v. Kehoe*, 133 Ohio App.3d 591, 607 (12th Dist.1999). Therefore, "this court will not disturb a trial court's decision concerning such testimony absent an abuse of discretion and some demonstration that the court's abuse of discretion 'materially prejudiced the objecting party.' " *State v. Bond*, 10th Dist. No. 11AP-403, 2011-Ohio-6828, ¶ 14, quoting *State v. Brumback*, 109 Ohio App.3d 65, 77 (9th Dist.1996). In order to satisfy the requirement that the opinion testimony must be rationally based on the perceptions of the witness, the opinion of the lay witness must be " 'one that a rational person would form on the basis of the observed facts.' " *State v. Mulkey*, 98 Ohio App.3d 773, 784 (10th Dist.1994), quoting *Lee v. Baldwin*, 35 Ohio App.3d 47, 49 (1st Dist.1987).

{¶ 14} In the present case, we agree with the trial court that Brosius's opinion constituted permissible lay opinion under Evid.R. 701. Brosius was present when the signal head fell, witnessed one of the same cable grips slipping when he used it at another intersection several days later, and witnessed the same cable grip slipping again when he tested it one week later. His opinion testimony was clearly helpful to the trier of fact to determine the mechanical failings of the grip and how the accident could occur. Although he was not an expert, there was no specialized knowledge necessary for him to render an opinion on what had caused the head signal to fall. No specialized knowledge was necessary for him to take note that one of the same cable grips involved in the accident was slipping during a later job and during the subsequent test he performed. He was certain that the slipping grip he identified during the later job and test was one of the same ones he was using during the accident, as he only had two in his truck. Brosius's opinion that the slipping and faulty cable grip was to blame for the incident was within the knowledge of a layperson.

{¶ 15} Furthermore, even if Brosius's conclusion based upon his "test" of the cable grips drew from his technical knowledge gained during his signal work with ODOT, in certain circumstances concerning matters "of a technical nature," a court may allow "lay opinion testimony on a subject outside the realm of common knowledge" where the testimony still falls "within the ambit of the rule's requirement that a lay witness's opinion be rationally based * * * upon a layperson's personal knowledge and experience." *State v. McKee*, 91 Ohio St.3d 292, 297 (2001). Here, Brosius's deposition testimony recounted his first-hand experience with the cable grip prior to the incident, during the incident, at another job after the incident, and then later during his testing. Brosius also worked for 14 years in ODOT's signal department. He was intimately familiar with how cable grips operated, had never had a problem with them before, and had a firm foundation to render an opinion based on his familiarity with the devices. Therefore, Brosius's observations and opinions regarding the cable grip were rationally based upon his personal knowledge and experience.

{¶ 16} Furthermore, appellants argue that the signal heads had collapsed at least twice before when no grips were being employed and Brosius did not actually see the cable slip at the time of the accident; thus, something other than a faulty grip may have caused the collapse that injured appellant. However, Brosius testified that there was no other way the span line could have collapsed. He said that, after the accident, the cable grip was still attached to one side of the broken line but was detached from the other. He testified that, therefore, the cable grip must have slipped from one side of the severed span line. Brosius did not testify that the line had any other breaks in it or that the come-along was broken. Although appellants suggest there could be other reasons for the collapse, they failed to satisfy their reciprocal burden to set forth specific facts showing that there is a genuine issue for trial. The two prior collapses were not possible reasons for the final collapse that was responsible for the present injuries. The first collapse was due to a live electrical wire burning through the span wire, and the second collapse was due to, according to Brosius, a three-bolt clamp coming off. Outside of these two impossible scenarios, appellants suggest no other theory as to why the signals fell, while ODOT presented testimony to support a particular cause. Accordingly, we find the trial court did not abuse its discretion in permitting Brosius's lay testimony.

{¶ 17} Appellants also argue that the trial court should have stricken Brosius's opinions because they were never provided in discovery. Appellants claim that ODOT did not identify Brosius as an expert and represented that there was no scientific testing or study done on any device or instrument. However, as we have found that Brosius's testimony was properly admitted lay opinion testimony, that ODOT did not identify him as an expert is immaterial. Furthermore, to the extent that Brosius's "test" on the cable grip constituted "scientific testing" or a "study" on the device, appellant had sufficient notice of Brosius's experiment. Brosius's deposition took place nearly one year before ODOT filed for summary judgment, giving appellants ample opportunity to study and test the cable grip and locate a witness or expert to rebut Brosius's opinions. Therefore, as we can find no prejudice, even assuming the facts as appellants maintain, this argument is without merit.

{¶ 18} Appellants also contend that Brosius's opinion was inadmissible because his "test" was not based on reliable scientific, technical, or other specialized information, as required by Evid.R. 702(C). However, the requirements of Evid.R. 702(C) apply only to expert testimony. In addition, if appellants desired to challenge Brosius's "test" on the cable grip or point out some fault in his method, they were free to submit competing evidence from their own testing. Therefore, we find this argument without merit.

{¶ 19} Appellants also argue that even if the court were to accept Brosius's opinion, ODOT was not absolved from liability because the cable grip was regularly used by ODOT, and it was under the exclusive control of ODOT; therefore, reasonable minds could conclude that ODOT's duty of reasonable care extended to the proper maintenance and use of its tools and supplies. However, there is no evidence whatsoever that ODOT improperly maintained the cable grip. Indeed, Brosius testified that he had never seen the cable grip slip before, and as soon as he saw it slip for the first time during another subsequent job, he tested the grip the next morning and immediately took the grip out of service after he verified that it was slipping and defective. Therefore, this argument is without merit.

{¶ 20} Appellants next argue that the doctrine of res ipsa loquitur applies. The doctrine of res ipsa loquitur is not a substantive rule of law, but an evidentiary one that permits a factfinder to infer that the defendant was negligent. *Jennings Buick, Inc. v. Cincinnati*, 63 Ohio St.2d 167, 169 (1980). " 'A *res ipsa loquitur* case is ordinarily merely

one kind of case of circumstantial evidence, in which the jury may reasonably infer both negligence and causation from the mere occurrence of the event and the defendant's relation to it.' " (Emphasis sic.) *Degen v. Mann*, 4th Dist. No. 00CA2575 (May 17, 2001), quoting Restatement of the Law 2d, Torts, Section 328D, Comment b (1965). Before the inference of the defendant's negligence may arise, the plaintiff must demonstrate the logical premises for the inference, which are: (1) the instrumentality causing the injury was, at the time of the injury, or at the time of the creation of the condition causing the injury, under the exclusive management and control of the defendant, and (2) that the injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed. *Jennings Buick* at 170-71, citing *Hake v. Wiedemann Brewing Co.*, 23 Ohio St.2d 65, 66-67 (1970).

{¶ 21} The doctrine does not apply when the facts are such that an inference that the accident was due to a cause other than defendant's negligence could be drawn as reasonably as that it was due to his negligence. *Loomis v. Toledo Rys. & Light Co.*, 107 Ohio St. 161, 170 (1923), quoting 1 Sherman and Redfield on Negligence, Section 58b (6th Ed.). Thus, " '[i]f from the nature of the event causing the injury an enquiry naturally arises which one of two or more persons, acting independently, is responsible * * * the application of the maxim is excluded by its terms.' " *Id.* Whether a plaintiff has adduced sufficient evidence to warrant application of the doctrine of res ipsa loquitur is a question of law subject to de novo review on appeal. *Degen*, citing *Hake* at 66-67.

{¶ 22} Appellants claim that *Franks v. Ohio Dept. of Transp.*, Ct. of Cl. No. 2004-04205-AD, 2004-Ohio-4379, is directly on point with the present case. In *Franks*, Franks was driving a vehicle that was hit by an overhead traffic signal that fell after the suspension cable broke. Franks filed a negligence action against ODOT. ODOT denied liability. Neither party had an explanation for the cause of the collapse, though ODOT cited the abnormally high wind conditions at the time. The court found that traffic signals do not normally fall unless negligence is involved, and the doctrine of res ipsa loquitur applied. The court held that it could infer that Franks's damages were related to ODOT's maintenance of the traffic signal. The court found that the instrumentality involved, under the circumstances, was under the exclusive control of ODOT, and the property damage occurred under such conditions that, if proper precautions were observed, such an event would not have happened. The court concluded the damage occurred when a defective

suspension cable failed, causing the traffic signal to fall and crash onto plaintiffs' vehicle, and the wind conditions were insufficient to solely cause the failure of ODOT's traffic signals. When installed, the court reasoned, traffic signals are designed to withstand anticipated weather conditions. The court said that ODOT should have conducted traffic signal maintenance and inspection in a more frequent manner.

{¶ 23} After reviewing the above case law on the law of res ipsa loquitur, we find it does not apply to this case, and *Franks* is inapposite. Here, all of the facts connected with an accident fail to point to the negligence of ODOT as the proximate cause of the injury. Instead, the facts show that an inference could as reasonably be drawn that the accident was due to a manufacturing defect in the cable grip. There is also no evidence in the record that ODOT failed to properly inspect the cable grip, that the cable grip had demonstrated any defect prior to the incident in question, or that ODOT used the cable grip negligently. Unlike *Franks*, in which neither party presented evidence as to why the signal fell, in the present case, ODOT presented evidence demonstrating that one of the cable grips was defective and slipping. Furthermore, the present case is unlike *Franks* in that the defective cable grip was sufficient to solely cause the traffic signals to fall, while in *Franks* the trial court found the wind alone was insufficient to solely cause the traffic signals to fall. Therefore, we find res ipsa loquitur does not apply to the present circumstances.

{¶ 24} Appellants next argue that the trial court erred when it found that ODOT lacked notice of any problems with the cable grip. Initially, appellant contends that proof of notice of a dangerous condition is not even necessary, citing *Fortune v. Ohio Dept. of Transp.*, Ct. of Cl. No. 2002-07029-AD, 2002-Ohio-6951, in which the Court of Claims found that proof of notice of a dangerous condition is not necessary when the defendant's own agent actively caused such condition. Appellants argue that, here, reasonable minds could conclude that ODOT employees actively caused the conditions causing the span wire to fall. Appellants contend that Baker had no experience splicing wires and did a "terrible" job doing it, which was supported by the fact that Brosius saw one of the three-bolt clamps on the ground after the accident. Appellants also point out that Brosius chose to start work with the police officer and moving traffic below. However, whether Baker did a "terrible" job is of no consequence. The accident in question was unrelated to Baker's work, as Brosius had already removed Baker's splice at the time of the incident. Also,

although theoretically Brosius "caused" the conditions that made the accident possible, in that he installed the cable grips and come-along, Brosius's actions were not the underlying cause of the accident; rather, the only evidence on causation was Brosius's opinion that the cable grip slipped, and it is clear Brosius had no notice of this defect prior to the accident.

{¶ 25} Appellants next contest the trial court's view that ODOT lacked notice based upon Brosius's speculative opinion that the cause of the accident was a defective cable grip. We have already addressed this argument above and found Brosius's opinion was admissible and reasonable based upon his own perceptions. Therefore, this argument is without merit.

{¶ 26} Appellants also claim that, even if they had to demonstrate notice on ODOT's behalf, reasonable minds could conclude ODOT had both actual and constructive notice. Appellants claim that ODOT knew the span wire was burned, it knew that the wire was a hazardous condition when it allowed it to be in place for five weeks with an untested splicing method performed by an inexperienced employee, and it knew that the signal heads were in danger of falling when they almost fell to the ground after Brosius unlashed them. However, none of these three circumstances were related to the reason for the final collapse, and none placed ODOT on notice of the actual cause of the signal head collapse, which Brosius testified was the slipping cable grip. Appellants present no evidence that ODOT had any notice that the cable grip it had been using without incident would fail. Therefore this argument is without merit. For all the foregoing reasons, we find the trial court properly granted summary judgment to ODOT.

{¶ 27} Accordingly, appellants' single assignment of error is overruled, and the judgment of the Court of Claims of Ohio is affirmed.

*Judgment affirmed.*

KLATT, P.J., and CONNOR, J., concur.

_____