[Cite as *State v. Grajales*, 2018-Ohio-1124.]

grajalesCOURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. John W. Wise, P. J. |
| Plaintiff-Appellee | Hon. Patricia A. Delaney, J. |
| | Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 17 CAC 03 0020 |
| JOSE OLIVAN GRAJALES | |
| | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:      Criminal Appeal from the Municipal Court,
Case No.  16 CRB 03563


JUDGMENT:      Affirmed


DATE OF JUDGMENT ENTRY:      March 26, 2018


APPEARANCES:

For Plaintiff-Appellee

ELIZABETH A. MATUNE
ASSISTANT PROSECUTOR
70 North Union Street
Delaware, Ohio  43015

For Defendant-Appellant

RICHARD DRUCKER
MARGARET W. WONG & ASSOCIATES
3150 Chester Avenue
Cleveland, Ohio  44114

*Wise, P. J.*

**{¶1}** Defendant-appellant Jose Olivan Grajales appeals his conviction on one count of domestic violence, one count of assault and one count of disorderly conduct entered in the Delaware County Municipal Court following a jury trial.

**{¶2}** Plaintiff-Appellee is the State of Ohio.

STATEMENT OF THE CASE

**{¶3}** On December 16, 2016, Jose Olivan Grajales was charged with Domestic Violence in violation of R.C. §2919.25(A), Assault in violation of R.C. §2903.13(A) and Disorderly Conduct in violation of R.C. §2917.11(A)(1) in the Delaware Municipal Court.

**{¶4}** On March 9, 2017, a jury trial commenced in this matter. At trial, the jury heard testimony from the victim, K.V., Deputy Andrew Lee, Deputy Rashad Pitts on behalf of the state of Ohio. The defense called Delane Thomas and Appellant.

**{¶5}** The victim testified that she and Appellant were out on a shopping trip on December 15, 2016, when they got into an argument. (T. at 129). She stated that the argument continued once the couple arrived home, with Appellant becoming increasingly angrier and more agitated. (T. at 129-130). Soon after they walked into the house, Appellant struck her and threw her to the ground. (T. at 131). After she was on the ground, Appellant kicked and hit her. *Id.* She got back onto her feet, but Appellant shoved her into the wall and continued hitting her. *Id.* When she got back up again, Appellant grabbed her by her hair, threw her to the ground and continued kicking her. *Id.* Later K.V. discovered that when Appellant grabbed her hair, he ripped a chunk of her hair out of her head. (T. at 133). K.V. testified that she tried to shield herself from the blows as the assault continued. (T. at 133). For that, her husband

mocked her and called her "a baby." *Id.* Appellant next grabbed her by the legs and dragged her over to and then out through the front door, closing it behind him. (T. at 131). K.V. testified that she did not have her cell phone, keys, or wallet, and it was below freezing outside. (T. at 131-132). Terrified, she hid in a shed for as long as she could, but she eventually became numb from the freezing temperatures and, lacking any other options, returned to the house. (T. at 132, 136). K.V. stated she told Appellant that she was leaving, but that he asked her to talk things out instead. (T. at 135). She replied that Appellant needed to admit what he had done wrong. *Id.* Instead, Appellant left the room. *Id.* K.V. then retrieved her cell phone and keys and left the house. *Id.* She then locked herself in her car and called 911. *Id.*

{¶6}    Deputy Lee, with the Delaware County Sheriff's Office, responded to K.V.'s call for help. (T. at 156-157). He testified that when he arrived, he found K.V. in her car crying. (T. at 157). K.V. explained to him that she had just been assaulted by her husband and pulled from her pocket the clump of hair Appellant ripped from her head. *Id.*

{¶7}    After speaking with K.V., Deputy Lee made contact with Appellant, who was still inside the house. (T. at 158, 160). Deputy Lee recalled that Appellant seemed calm when he answered the door. (T. at 168). When Deputy Lee asked Appellant, "What's going on," he replied that "we were at the store, she said I was looking at a girl we started arguing, I told her if you want to leave, you can leave, I can't do this anymore, we've argued about it in the past, she's left before ... " (DVD audio at 2:34-3:59). Deputy Lee then asked, "You guys didn't get into a physical altercation?" to which Appellant responded, "We were just arguing." (DVD audio at 4:-4:17).

**{¶8}** Deputy Lee then confronted Appellant with K.V.'s allegations, telling him, "so she's saying that you pushed her into the wall and she fell down and you started kicking and hitting her." (DVD audio at 4:18-4:24). Appellant then stated "I mean, it wasn't like (inaudible) kicking her. She started hitting me, and we just sort of (inaudible) held her. I told her, you can leave. There's no marks anywhere. I mean, I just told her, I just grabbed her, and told her you can leave ... " (DVD audio at 4:25 to 4:42).

**{¶9}** Appellant continued on to state:

We just sort of push each other, not push each other, but just like, look, if you want to leave you can leave, (something) arguing and fighting. There were cuss words, you know, bad words said, hurtful words and I told her to leave. She didn't want to. I said leave. She said fine, and just walked out. So she came back, just banged on the door ... came in crying, sat on the couch and said I'm freezing, I can't feel my body. I told her sit down, I put some blankets on her. Then she talking about the same topic again. I told her I wasn't going to argue ... (inaudible) (DVD audio at 5:30 to 6:17).

**{¶10}** Deputy Lee then asked, "So, you never like, grabbed her by her hair or anything? Because she's got a chunk of her hair in her hand. Do you understand where I'm headed? She's got a chunk of her hair in her hand. And you initially told me nothing happened, then you now added that pushing happened, and ... " (DVD audio at 6:16-6:33). Appellant responded, "I did. You know, I did (inaudible). I grabbed her hair ... " and begins to cry. (DVD audio at 6:34-6:50). Appellant also admitted to pushing K.V. into the wall. (T. at 170).

**{¶11}** Deputy Lee stated that he then placed Appellant under arrest.

**{¶12}** Appellant also testified in his own defense. Appellant testified that he told K.V. to leave their home because she was angry with him. (T. at 223). According to Appellant, K.V. became angry, screaming "I hate you" at Appellant and then either fell or threw herself to the ground. (T. at 223-224, 234). Once on the ground, Appellant claimed that K.V. turned red and told him she wished he was dead and that she never married him. (T. at 224). Appellant stated that while she was still on the ground, K.V. began kicking and swinging, screaming, and pulling out her own hair. (T. at 226-227). Appellant did not explain how or why she ended up outside but stated that once K.V. came back inside from the cold, he got her two blankets and some coffee and then changed the topic. (T. at 229-230).

**{¶13}** When confronted with his admissions to the assault to Deputy Lee, Appellant stated that they were misunderstandings and misinterpretations. (T. at 237-240).

**{¶14}** At the conclusion of the trial, following deliberations, the jury found Appellant guilty on all three counts. The trial court sentenced Appellant to thirty (30) days in jail, one (1) year probation and fines and costs on the Domestic Violence charge. The trial court did not impose sentence on the other charges, finding that they were allied offenses.

**{¶15}** Appellant now appeals, assigning the following errors for review:

ASSIGNMENTS OF ERROR

**{¶16}** "I. THE DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AND DUE PROCESS OF HIS RIGHTS UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND

ARTICLE ONE, SECTION TEN OF THE OHIO CONSTITUTION DUE TO THE FAILURE TO FILE A MOTION TO SUPPRESS STATEMENTS ON THE DEFENDANTS BEHALF.

{¶17} "II. THE TRIAL COURT ERRED WHEN IT FAILED TO INSTRUCT THE JURY ON THE AFFIRMATIVE DEFENSE OF SELF DEFENSE AND DEFENSE COUNSEL'S FAILURE TO REQUEST THE INSTRUCTION WAS PLAIN ERROR.

{¶18} "III. THE JURY VERDICT FINDING THE APPELLANT GUILTY OF THE OFFENSES OF DOMESTIC VIOLENCE AND ASSAULT WAS CONTRARY TO THE LAW AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, SINCE THE STATE OF OHIO FAILED TO PROVE ESSENTIAL ELEMENTS OF THE OFFENSES, TO WIT: THAT THE APPELLANT KNOWING CAUSED OR ATTEMPTED TO CAUSE PHYSICAL HARM TO HIS WIFE.

{¶19} "IV. THE TRIAL COURT IMPROPERLY ALLOWED PURPORTED EXPERT TESTIMONY TO BE ADMITTED INTO EVIDENCE BY THE STATE OF OHIO FROM DEPUTY LEE WITHOUT OBJECTION FROM DEFENSE COUNSEL THAT PREJUDICED THE APPELLANT AND CONSTITUTED PLAIN ERROR."

**I.**

{¶20} In his First Assignment of Error, Appellant argues that he was denied the effective assistance of counsel. We disagree.

{¶21} More specifically, Appellant argues that his counsel was ineffective in failing to file a motion to suppress the statements he made to Deputy Lee.

{¶22} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's

essential duties to Appellant. The second prong is whether Appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180(1993); *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373(1989).

{¶23} Counsel is unconstitutionally ineffective if his performance is both deficient, meaning his errors are "so serious" that he no longer functions as "counsel," and prejudicial, meaning his errors deprive the defendant of a fair trial. *Maryland v. Kulbicki,* 577 U.S. ——, 2015 WL 5774453(Oct. 5, 2015) (citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984))

### *Failure to File Motion to Suppress*

{¶24} Trial counsel's failure to file a suppression motion does not per se constitute ineffective assistance of counsel. *State v. Madrigal,* 87 Ohio St.3d 378, 389, 2000–Ohio–0448. Counsel can only be found ineffective for failing to file a motion to suppress if, based on the record, the motion would have been granted. *State v. Lavelle,* 5th Dist. No. 07 CA 130, 2008–Ohio–3119, at ¶ 47; *State v. Cheatam,* 5th Dist. No. 06–CA–88, 2007–Ohio–3009, at ¶ 86. The defendant must further show that there is a reasonable probability that the outcome would have been different if the motion had been granted or the defense pursued. *See Kimmelman v. Morrison,* 477 U.S. 365, 375, 106 S.Ct. 2574, 2583, 91 L.Ed.2d 305 (1986); *see, also, State v. Santana,* 90 Ohio St.3d 513, 739 N.E.2d 798 (2001), *citing State v. Lott,* 51 Ohio St.3d 160, 555 N.E.2d 293 (1990).

{¶25} In order for an accused's statement to be admissible at trial, police must have given the accused a *Miranda* warning if there was a custodial interrogation. *Miranda v. Arizona,* 384 U.S. 436, 471, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). If that condition is

established, the court can proceed to consider whether there has been an express or implied waiver of *Miranda* rights. *Id.,* at 476, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

**{¶26}** A custodial interrogation occurs when a person has been taken into custody or otherwise deprived of his freedom of action in any significant way and a law enforcement officer questions that person. *Id.* "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id.*

**{¶27}** In *Thompson v. Keohane,* 516 U.S. 99, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995), the Court offered the following description of the *Miranda* custody test:

> Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave. Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.

**{¶28}** 516 U.S., at 112, 116 S.Ct. 457 (internal quotation marks omitted). *Accord, Yarborough v. Alvarado,* 541U.S. 652, 653, 124 S.Ct. 2140, 158 L.Ed.2d 938(2004).

**{¶29}** The police and courts must "examine all of the circumstances surrounding the interrogation," *Stansbury v. California,* 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293(1994), including those that "would have affected how a reasonable person"

in the suspect's position "would perceive his or her freedom to leave," *Id.,* at 325, 114 S.Ct. 1526. However, the test involves no consideration of the particular suspect's "actual mindset." *Yarborough,* 541 U.S. 652, 667, 124 S.Ct. 2140, 158 L.Ed.2d 938. *Accord, State v. Mason,* 82 Ohio St.3d 144, 153, 1998–Ohio–370, 694 N.E.2d 932 (1998); *State v. Gumm,* 73 Ohio St.3d 413, 429, 1995 Ohio 24, 653 N.E.2d 253 (1995).

{¶30} Appellant herein argues that he had been arrested and placed in handcuffs for transport to jail when he made incriminating statements to Deputies Lee and Pitts.

{¶31} Upon review, we find that Deputy Lee first encountered Appellant when he knocked on Appellant's door after speaking with Appellant's wife. Deputy Lee asked Appellant "[w]hat's going on?" Appellant first denied that any physical altercations had occurred, then claimed his wife had hit him, then admitted to grabbing her hair and pushing her into the wall. This exchange was all recorded and presented as an exhibit during trial.

{¶32} Based on the foregoing discussion and the statements made therein, we find that the incriminating statements made by Appellant occurred prior to him being taken into custody. We do not find that the interaction between Deputy Lee and Appellant was a custodial interrogation as there was no arrest at that point or any restraint on Appellant's movement. The questioning itself took place at Appellant's home, and Deputy Lee did not engage in any coercive tactics during his questioning of Appellant.

{¶33} Accordingly, Appellant has failed in his burden to establish a reasonable possibility that a motion to suppress, had one been filed, would have been granted.

{¶34} Appellant's First Assignment of Error is overruled.

**II.**

**{¶35}** In his Second Assignment of Error, Appellant argues the trial court erred in failing to give a self-defense instruction to the jury. We disagree.

**{¶36}** A trial court must instruct the jury on self-defense only when the defendant presents sufficient evidence at trial to warrant such an instruction. *See State v. Robinson*, 47 Ohio St.2d 103, 110–113, 351 N.E.2d 88 (1976). The trial court should view this evidence in the light most favorable to the defendant and determine, if the evidence is believed, whether it would permit a finding of reasonable doubt as to guilt under the legal test for self-defense. *Id.* When reviewing a court's refusal to give a requested jury instruction, an appellate court considers whether the trial court's refusal to give a requested instruction was an abuse of discretion under the facts and circumstances of the case. *State v. Wolons,* 44 Ohio St.3d 64, 541 N.E.2d 443 (1989).

**{¶37}** To establish self-defense in the use of non-deadly force, the accused must show that: 1) he was not at fault in creating the situation giving rise to the altercation; 2) the accused had reasonable grounds to believe and an honest belief, even though mistaken, that some force was necessary to defend himself against the imminent use of unlawful force; and 3) the force used was not likely to cause death or great bodily harm. *State v. Hoopingarner*, 5th Dist. Tuscarawas No. 2010AP 07 00022, 2010–Ohio–6490, ¶ 31, *State v. Medlock*, 5th Dist. Stark No. 2014CA00007, 2014–Ohio–3466, ¶ 13.

**{¶38}** As to the degree of force that is permitted, the defendant is privileged to use the amount of force that is reasonably necessary to repel the attack. *State v. Williford,* 49 Ohio St. 3d 247, 551 N.E.2d 1279 (1990). However, if the amount of force used is so disproportionate that it shows an "unreasonable purpose to injure," the defense of self-

defense is unavailable. *State v. Macklin*, 8th Dist. Cuyahoga No. 94482, 2011–Ohio–87, ¶ 27.

**{¶39}** In order to establish that the failure to give the requested jury instruction on self-defense was reversible error, Defendant must show that the court's refusal to give the requested instruction was an abuse of discretion and that he suffered prejudice as a result. *State v. Griffin* (July 15, 2005), Montgomery App. No. 20681, 2005-Ohio-3698. An abuse of discretion connotes more than a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the court. *State v. Adams* (1980), 62 Ohio St.2d 151.

**{¶40}** In the instant case, we find Appellant's trial testimony defeated his argument that he acted in self-defense. The Supreme Court of Ohio in *State v. Poole* (1973), 33 Ohio St.2d 18, 19, 294 N.E.2d 888, characterized the defense of self-defense as a "justification for admitted conduct." The court in *Poole* stated that this defense admits the facts claimed by the prosecution and then relies on independent facts or circumstances, which the defendant claims exempt him from liability. *Id.* Thus, self-defense seeks to relieve the defendant from culpability rather than to negate an element of the offense charged. However, Appellant testified at trial, as follows:

> Q: *** Focusing on this date, December 15, 2016, did you ever punch your wife?
>
> A: No, sir.
>
> Q: Hit her with an open hand?
>
> A: That's not true.
>
> Q: Slap her?

A: No, sir.

Q: Kick her?

A: No, sir.

Q; Drag her by the hair?

A: No, sir.

**{¶41}** (T. at 228).

**{¶42}** At trial, Appellant denied harm or trying to harm his wife. Further, Appellant never told police or testified at trial that he feared for his safety on the night in question. Consequently, he cannot assert self-defense because that defense requires the admission by the defendant of the essential facts alleged by the prosecution. *Poole, supra*. To maintain both positions is "logically and legally inconsistent," because "[a]ppellant cannot claim absolute innocence and simultaneously avail himself of an affirmative defense" of self-defense. *State v. Powell* (Sept. 29, 1997), 4th Dist. No. 96CA2257, 1997 WL 602864 . The court in *Powell* held:

> It would be nonsensical to permit a criminal defendant to completely deny that he committed the act underlying the charge, yet also claim that his commission of the act was justified and that he should therefore be excused from criminal responsibility. Such a holding would allow a criminal defendant to have his cake and eat it too.

**{¶43}** *Id.* at 5. Accord: *Poole, supra*; *State v. Kajoshaj* (Aug. 10, 2000), 8th Dist. No. 76857; *State v. Perry,* 5th Dist. No. 02–CA–77, 2003–Ohio–6097, at ¶ 27; *State v. Wall* (Aug. 21, 1973), 10th Dist. No. 73AP–115, 1973.

**{¶44}** Because Appellant denied committing the act alleged in the indictment, i.e., that he caused or attempted to cause physical harm to his wife, he is precluded from arguing on appeal that the trial court should have found he acted in self-defense.

**{¶45}** Based on the evidence, the court did not abuse its discretion in denying Appellant's request for a jury instruction on self-defense.

**{¶46}** Appellant's Second Assignment of Error is overruled.

**III.**

**{¶47}** In his Third Assignment of Error, Appellant argues that his convictions for domestic violence and assault were against the manifest weight and sufficiency of the evidence. We disagree.

**{¶48}** On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). *See also, State v. Thompkins*, 78 Ohio St.3d 380, 1997–Ohio–52, 678 N.E.2d 541. The granting of a new trial "should be exercised

only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

**{¶49}** We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 237 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 1997–Ohio–260, 674 N.E.2d 1159.

**{¶50}** In the case *sub judice*, Appellant was convicted of assault and domestic violence. "Assault" is in relevant part "knowingly caus[ing] or attempt[ing] to cause physical harm to another." R.C. §2903.13(A). Domestic violence is in relevant part "knowingly caus[ing] or attempt[ing] to cause physical harm to a family or household member." R.C. §2919.25(A).

**{¶51}** "Physical harm" in this context means "any injury, illness, or other physiological impairment, regardless of its gravity or duration."

**{¶52}** Here, there is no dispute that K.V. was Appellant's family and household member at the time of the offense. The question for the jury was whether Appellant "knowingly caus[ed] or attempt[ed] to cause" K.V. "any injury * * * regardless of its gravity or duration."

**{¶53}** At trial, K.V. testified that on the evening in question, Appellant hit her, pushed her to the ground, kicked her, threw her into a wall, pulled her hair out, pushed her to the ground again and continued to kick her. (T. at 131-134, 142-143, 149-151). She further testified that he dragged her outside by her legs and left her out in the cold, without a coat, or keys or a phone. *Id.* Deputy Lee testified that he observed K.V.'s injuries which

were consistent with the account of events as described to him by K.V. (T. at 171). Photographs of K.V. depicting the injuries she sustained from Appellant were presented to the jury. (T. at 137).

**{¶54}** The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witnesses' credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. McGregor,* 5th Dist. Ashland No. 15–COA–023, 2016–Ohio–3082, 2016 WL 2942992, ¶ 10, citing *State v. Craig,* 10th Dist. Franklin No. 99AP–739, 2000 WL 297252 (Mar. 23, 2000). Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. *Id.* Our review of the entire record reveals no significant inconsistencies or other conflicts in the State's evidence which would demonstrate a lack of credibility of the witnesses sufficient to find the jury lost its way to finding Appellant guilty.

**{¶55}** Based on the foregoing, together with all of the evidence presented, we find that Appellant's convictions were supported by sufficient evidence and that the jury did not lose its way in finding Appellant guilty beyond a reasonable doubt.

**{¶56}** Appellant's Third Assignment of Error is overruled.

**IV.**

**{¶57}** In his Fourth Assignment of Error, Appellant argues the trial court erred in allowing the testimony of Deputy Lee into evidence. We disagree.

**{¶58}** Initially we note that Appellant's trial counsel did not object to Deputy Lee's testimony and has therefore waived all but plain error. Pursuant to Crim.R. 52(B), "plain

errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The rule places several limitations on a reviewing court's determination to correct an error despite the absence of timely objection at trial: (1) "there must be an error, i.e., a deviation from a legal rule," (2) "the error must be plain," that is, an error that constitutes "an 'obvious' defect in the trial proceedings," and (3) the error must have affected "substantial rights" such that "the trial court's error must have affected the outcome of the trial." *State v. Dunn,* 5th Dist. No. 2008–CA–00137, 2009–Ohio–1688, citing *State v. Morales,* 10 Dist. Nos. 03–AP–318, 03–AP–319, 2004–Ohio–3391, at ¶19 (citation omitted). The decision to correct a plain error is discretionary and should be made "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Barnes, supra*, quoting *State v. Long,* 53 Ohio St .2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

**{¶59}** The admission or exclusion of evidence rests in the sound discretion of the trial court. *State v. Sage* (1987), 31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Wilmington Steel Products, Inc. v. Cleveland Elec. Illum. Co.* (1991), 60 Ohio St.3d 120, 122, 573 N.E.2d 622, 624.

**{¶60}** Evid.R. 701 affords the trial court considerable discretion in controlling the opinion testimony of lay witnesses. *State v. Harper,* 5th Dist. Licking No. 07 CA 151, 2008–Ohio–6926, ¶ 37, citing *City of Urbana ex rel. Newlin v. Downing,* 43 Ohio St.3d 109, 113, 539 N.E.2d 140 (1989) and *State v. Kehoe,* 133 Ohio App.3d 591, 603, 729 N.E.2d 431 (12th Dist.1999). "If the witness is not testifying as an expert, the witness'

testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Ohio Evid.R. 701. Lay opinion, inferences, impressions or conclusions are therefore admissible if they are those that a rational person would form on the basis of the observed facts and if they assist the jury in understanding the testimony or delineating a fact in issue. *Id.*

**{¶61}** Specifically, Appellant argues that the following testimony by Deputy Lee with regard to the chunk of hair constituted expert testimony.

**{¶62}** At trial, the state asked Deputy Lee the following questions:

Q: And I know you can't tell for certain, but based on when you looked at that hair and you have the other chunk of hair, did that seem to match? Does it look like it could have come from the same person?

A: Yes

***

Q: Have you ever responded to a situation before where someone had their hair pulled out?

A: I can think of one other incident. It wasn't a domestic. A fight.

Q: All right. And would you expect to see a lot of blood if someone had their hair pulled out based on that experience?

A: I didn't see any blood on that scene that I can think of, no.

**{¶63}** (T. at 17-180).

**{¶64}** We find that such testimony was a lay opinion based on Deputy Lee's experience. We further find that based on his qualifications and experience, the trial court

had the discretion to admit his testimony as material and relevant. Deputy Lee testified as a lay witness to opinions based upon his experience as a police officer, his previous investigations, and his perception of evidence at issue. His testimony was helpful to determine facts in issue, therefore the testimony was properly admitted under Evid.R. 701. *See, State v. McKee*, 91 Ohio St.3d 292, 2001–Ohio–41, 744 N.E.2d 737.

**{¶65}**  Accordingly, we overrule Appellant's Fourth Assignment of Error.

**{¶66}**  The decision of the Municipal Court of Delaware County, Ohio, is affirmed.

By: Wise, P. J.

Delaney, J., and

Baldwin, J., concur.

JWW/d 0313