[Cite as *State v. Handlin*, 2022-Ohio-4647.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Earle E. Wise, Jr., P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 21CA21 |
| | : | |
| JENNIFER HANDLIN | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Fairfield County Court
of Common Pleas, Case No.
2019CR738

JUDGMENT:                                      AFFIRMED

DATE OF JUDGMENT ENTRY:          December 21, 2022

APPEARANCES:

For Plaintiff-Appellee:                          For Defendant-Appellant:

DAVE YOST                                        TODD W. BARSTOW
OHIO ATTORNEY GENERAL                261 W. Johnstown Road Ste. 204
BRAD TAMMARO                                Columbus, OH 43230
SPECIAL PROSECUTING ATTORNEY
30 East Broad St., 23rd Floor
Columbus, OH 43215

*Delaney, J.*

{¶1}   Appellant Jennifer Handlin appeals from the May 20, 2021, Judgment Entry of Sentence of the Fairfield County Court of Common Pleas. Appellee is the state of Ohio.

## FACTS AND PROCEDURAL HISTORY

{¶2}   Mother was born in 1947 and developed poor health, culminating in a crisis in 2006.  Mother became dependent on narcotics to control her pain, rendering her unable to handle her own finances.  Appellant, Mother's daughter, stepped in to help, and Mother turned over control of her debit card and checkbook. This case arose in 2015 when Mother's health and focus improved and she realized that appellant had been siphoning funds from her account.

{¶3}  At the outset of the case in 2006, Mother was employed, living alone, and renting an apartment in Pickerington.  As her medical problems worsened, however, she retired on disability and an annuity from her ex-husband. She would not be eligible for Social Security for five years.  The side effects of the narcotics made it difficult for Mother to handle her own finances, and appellant offered to help. Mother turned over the debit card and checkbook for her account at Fairfield Bank.

{¶4}  Mother's parents both passed away in 2006; they had lived in a dilapidated house in Bettsville, Seneca County.[1] Upon the parents' demise, appellant bought the Bettsville house and suggested that Mother move into it to be closer to several of her sisters.

---

[1] The deplorable condition of the Bettsville residence was described at trial. Minimal maintenance was not kept up during the time that Mother rented from appellant, with the residence being described as a "disgusting eyesore."  T. 336.

{¶5} Upon moving to Bettsville, the plan was that Mother would pay rent of $500 per month to appellant. Mother's household expenses, including utilities, would be paid by appellant from Mother's bank account. Because Mother had no access to her own debit or credit cards, or checking account, she received an allowance from appellant of $500 per month, to be paid in two monthly payments of $250 each. Appellant was to mail Mother a check for $250 on the 1st and 15th of each month; when Mother qualified for Social Security, the payments were increased to $300 twice per month. All of Mother's expenses other than utilities had to be paid for, in cash, from this allowance. If appellant purchased something for Mother, the amount was deducted from the allowance payment before it was sent to Mother.

{¶6} Mailing of the twice-monthly checks proved problematic, with the checks arriving late or not at all. If an allowance check failed to arrive, Mother was unable to buy groceries. If the check failed to arrive, Mother notified appellant and she put the check in the mail.

{¶7} The untimely checks resulted in a change to the allowance system. Mother asked appellant for a book of checks to keep so that she could write her own allowance checks at the appropriate times. Mother also began to write checks for utility bills that appellant neglected to pay. Mother had to call appellant and report the amount of every check so that appellant could purportedly track the balance and manage the account. Appellant did nothing to manage Mother's money even minimally. Appellant kept no records, receipts, check registers, or bank statements. She never balanced Mother's checkbook. Instead, appellant claimed to pay bills as they became due, which meant contacting the billing agency when shutoff notices were posted, or a check bounced.

{¶8} Mother had no means of knowing the balance of the checking account. While Mother lived in Bettsville, all bank statements were sent electronically to appellant in Pickerington, although she did not retain the statements or manage them. Appellant failed to maintain any method of identifying Mother's bank balance.

{¶9} When Mother asked appellant for money for living expenses beyond the allowance, she was refused. One example at trial was Mother's request for a small freezer to reduce the number of times Mother would need to grocery shop. The cost of the freezer was $100, but appellant told Mother she could not afford it. Mother similarly was told there was not enough money to cover new glasses, a new bed, or a trip to the dentist.

{¶10} Appellant also purportedly shopped for Mother and took money from Mother's account to cover the shopping expenses. Appellant used Mother's money to pay for gas to cover her trips to Bettsville, and to pay for meals they ate together during appellant's visits. Mother also purportedly instructed appellant to take money from her account to cover gifts to appellant's children and popcorn for a child's scouting fundraiser.

{¶11} In addition to keeping Mother living at a subsistence level, appellant's control of Mother's bank account enabled appellant to use Mother's funds at will, with Mother having no means of knowing appellant was using her money. Appellant handled Mother's money for over seven years, but their agreement did not include permission for appellant to use Mother's money for anything other than Mother's own expenses. Appellant did not have permission to use Mother's money as a loan on the condition the money was paid back. Appellant did not have permission to transfer funds from Mother's

account to other accounts controlled by appellant. The only expense payable to appellant from Mother's account was $500 per month for rent on the Bettsville house.

{¶12} Appellant also failed to properly maintain her own bank accounts or pay her own bills; consequently, appellant's own bills became overdue, and appellant transferred funds from one account to another to cover bills as they became due. Appellant routinely commingled funds and paid for a homeschooling conference and a music conference she attended, with Mother's money. In May and June 2012, appellant transferred money from Mother's account into appellant's daughter's account.

{¶13} In 2015, appellant stole Mother's identity and took out loans in her name. Mother was unaware of these loans and did not give appellant permission to do so. Mother became increasingly aware of the irregularities as allowance checks bounced and disconnect notices arrived at the Bettsville house. Mother's internet was shut off and her phone was disconnected. She learned from other people that shutoff notices had been affixed to her door. She was periodically advised that her cable would be shut off. She learned of the loan's appellant took out in her name.

{¶14} In 2015, Mother's physical and mental health improved after a surgery that alleviated her need for narcotics. Mother asked appellant to return control over her own finances. After Mother's second request, appellant returned the checkbook but warned Mother, "You're not going to be happy with me." Mother subsequently realized that appellant had been siphoning money from her account and demanded that appellant return the money. Appellant failed to do so, and Mother contacted law enforcement.

*Testimony of Special Agent Kevin Cooper*

{¶15} At trial, Special Agent Kevin Cooper of the Ohio Attorney General's Office, Bureau of Criminal Investigation, testified for appellee. Cooper is a C.P.A. and investigates fraud on behalf of the Ohio attorney general. His investigations begin with examination of bank statements, credit card transactions, checks, and transfers to understand the dynamics of the fraud or misappropriation. He interviews victims and anyone with knowledge of the questioned transactions. He identifies transactions that correspond with criminal conduct and documents the transactions on spreadsheets. He identifies misappropriation by investigating who is authorized to make a transaction and who benefits from a transaction.

{¶16} In the instant case, Cooper described the investigation as complicated because it involved many transactions among multiple accounts over a period of years, from 2008 until 2015. During this time, Mother received retirement and disability payments of approximately $2200 per month. Cooper examined records for Mother's Fairfield Bank account ending in 1121; Mother and appellant had access to the account. Appellant and her husband, Kevin Handlin, were not authorized to use the account for their own benefit. Cooper ultimately determined appellant took approximately $79,000 in unauthorized funds from Mother.

*Trial, conviction, sentencing, and restitution*

{¶17} Appellant was charged by indictment as follows: Count I, engaging in a pattern of corrupt activity pursuant to R.C. 2923.32(A)(1) and/or (A)(3) and R.C. 2923.32(B)(1), a felony of the first degree; Count II, theft from a person in a protected class pursuant to R.C. 2913.02(A)(1)(2) and/or (3) and R.C. 2913.02(B)(3), a felony of

the second degree; Count III, telecommunications fraud pursuant to R.C. 2913.05(A), (B), and (C), a felony of the third degree; Count IV, forgery pursuant to R.C. 2913.31 (A)(1), a felony of the fifth degree; Count V, money laundering pursuant to R.C. 1315.55(A)(1)(2) and/or (3), a felony of the third degree; Count VI, money laundering pursuant to R.C. 1315.55(A)(1)(2) and/or (3), a felony of the third degree; and Count VII, identity fraud against a person in a protected class pursuant to R.C. 2913.49(B)(1) and/or (2), a felony of the third degree.

{¶18} Appellant entered pleas of not guilty and the matter proceeded to trial by jury. Appellant was found not guilty upon Counts I, IV, V, and VI, and guilty as charged upon Counts II, III, and VII. The trial court sentenced appellant to an aggregate prison term of 3 years and ordered restitution to Mother in the amount of $70,325.

{¶19} Appellant now appeals from the trial court's judgment entry of conviction and sentence.

{¶20} Appellant raises five assignments of error:

**ASSIGNMENTS OF ERROR**

{¶21} "I. HANDLIN RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION."

{¶22} "II. THE TRIAL COURT ERRED BY ALLOWING INTO EVIDENCE INADMISSIBLE CUMULATIVE EVIDENCE NOT DISCLOSED DURING DISCOVERY, IN VIOLATION OF HANDLIN'S RIGHTS TO A FAIR TRIAL AND DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."

{¶23} "III. THERE IS INSUFFICIENT EVIDENCE BEHIND HANDLIN'S CONVICTIONS, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 1 & 16, ARTICLE I OF THE OHIO CONSTITUTION."

{¶24} "IV. HANDLIN'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS I & 16, ARTICLE I OF THE OHIO CONSTITUTION."

{¶25} "V. THE TRIAL COURT UNLAWFULLY ORDERED HANDLIN TO PAY RESTITUTION IN AN AMOUNT THAT EXCEEDED THE ECONOMIC LOSS FROM HER OFFENSES, IN VIOLATION OF THE DUE PROCESS CLAUSE TO THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."

**ANALYSIS**

I.

{¶26} In her first assignment of error, appellant argues she received ineffective assistance of defense trial counsel because counsel did not object to Special Agent Cooper testifying as an expert witness. We disagree.

{¶27} Appellant alleges defense trial counsel's performance fell below an objective standard of reasonable representation, and that, but for his attorney's performance, a reasonable probability existed that appellant would have been found not guilty. *State v. Bradley* (1989), 42 Ohio St .3d 136, 538 N.E.2d 373. A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable

representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). To warrant a finding that trial counsel was ineffective, the petitioner must meet both the deficient performance and prejudice prongs of *Strickland* and *Bradley. Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251 (2009).

{¶28} The United States Supreme Court discussed the prejudice prong of the *Strickland* test:

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S.Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.*, at 693, 104 S.Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*, at 687, 104 S.Ct. 2052.

{¶29} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley,* 42 Ohio St.3d at 143, 538 N.E.2d 373, *quoting Strickland,* 466 U.S. at 697, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶30} Debatable strategic and tactical decisions may not form the basis of a claim for ineffective assistance of counsel. *State v. Phillips*, 74 Ohio St.3d 72, 85, 656 N.E.2d 643 (1995).

{¶31} In the instant case, appellant argues she received ineffective assistance of defense trial counsel because counsel did not object to the testimony of Special Agent Kevin Cooper. Appellant argues counsel should have objected to Special Agent Cooper's testimony because appellee "used Cooper as an expert witness against [appellant]," but Cooper merely reiterated what Mother told him. Brief, 7. We disagree with appellant's characterization of Cooper's testimony. As described supra in the statement of facts, Cooper is a C.P.A. who investigates financial fraud; he examined the transactions occurring in Mother's Fairfield Bank account between 2008 and 2015 and determined who was authorized to make the transactions and who benefited from the transactions.

{¶32} Appellee did not ask to have Cooper declared an expert and Cooper did not testify as an expert. "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Ohio Evid. R. 701. Lay opinion, inferences, impressions, or conclusions are therefore admissible if they are those that a rational person would form on the basis of the observed facts and if they assist the jury in understanding the testimony or delineating a fact in issue. *State v. Harper,* 5th Dist. Licking No. 07 CA 151, 2008–Ohio–6926, ¶ 37, citing *State v. Kehoe,* 133 Ohio App.3d 591, 603, 729 N.E.2d 431 (12th Dist.1999). Evid.R. 701 affords the trial court considerable discretion in controlling the opinion testimony of lay

witnesses. *Id.,* citing *City of Urbana ex rel. Newlin v. Downing,* 43 Ohio St.3d 109, 113, 539 N.E.2d 140 (1989) and *Kehoe,* supra, at 603.

{¶33} Each of Cooper's challenged statements is based directly upon what he learned during his investigation. *State v. Moore*, 5th Dist. Coshocton No. 14CA0028, 2016-Ohio-828, ¶ 82. Cooper examined the myriad transactions between 2006 and 2015 with an emphasis on who was authorized to make the transactions and who benefited from the transactions. Cooper did not merely repeat what Mother told him; her input on the nature of the transactions was only one piece of the puzzle. He looked at where the transactions occurred, with the knowledge that Mother's physical condition was significantly limiting and she had no access to the debit card, which was in appellant's possession. He verified transactions with identifiable vendors to determine whether Mother benefited from those transactions, or appellant. Cooper testified to his extensive training and experience in criminal investigation in general and to the steps taken in this investigation. His testimony regarding the financial misappropriation was helpful to the trier of fact in determining whether the transactions were legitimate. Cooper's opinion testimony was rationally based upon his investigation into the underlying incident and meets the requirements of Evid.R. 701.

{¶34} We therefore do not discern the basis for any objection to Cooper's testimony. Under the circumstances, Cooper's testimony meets the requirements of Evid.R. 701 and therefore, we cannot say that defense counsel's failure to object fell below an objective standard of reasonable representation. *State v. Harper*, 5th Dist. Licking No. 07 CA 151, 2008-Ohio-6926, ¶ 44.

{¶35} Appellant's first assignment of error is overruled.

II.

{¶36} In her second assignment of error, appellant argues the trial court improperly admitted cumulative evidence not disclosed during discovery. We disagree.

{¶37} During the cross-examination of appellant's spouse, Kevin Handlin, the prosecutor asked Handlin about appellee's Exhibit 28, a chart totaling expenses from Insight Cable, Columbia Gas, South Central Power, Eastside Kegler, Calm Coach Celebrate, Classic Conversations, Schooling, Rumpke, Bank of America, Secretary of State, and Yanni. Defense trial counsel immediately objected and said he was never provided with the document. The prosecutor responded that Exhibit 28 is a summary chart of multiple exhibits, already admitted, that would be developed during the witness's testimony. The trial court asked where the dollar amounts came from, and the prosecutor responded they are from documents already admitted into evidence in appellee's case in chief. The trial court found the exhibit to be an admissible summary chart of multiple exhibits and overruled the objection.

{¶38} Appellant asserts the trial court improperly admitted appellee's Exhibit 28, and summarily argues it should have been excluded on two bases. The decision to admit or exclude relevant evidence is within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *State v. Congrove*, 5th Dist. Morrow No. 11-CA-5, 2012-Ohio-1159, ¶ 31, citing *State v. Combs,* 62 Ohio St.3d 278, 581 N.E.2d 1071(1991); *State v. Sage,* 31 Ohio St.3d 173, 510 N.E.2d 343 (1987). An abuse of discretion implies more than an error of law or judgment; instead, the term suggests that the trial court acted in an unreasonable, arbitrary, or unconscionable manner. *See, State v. Xie,* 62 Ohio St.3d 521, 584 N.E.2d 715 (1992); *State v.*

*Montgomery,* 61 Ohio St.3d 410, 575 N.E.2d 167 (1991). When applying the abuse-of-discretion standard, a reviewing court may not substitute its judgment for that of the trial court. *In re Jane Doe I,* 57 Ohio St.3d 135, 138, 566 N.E.2d 1181 (1991).

{¶39} First, appellant argues the exhibit was needlessly cumulative. Evid. R. 403(B) governs the admissibility of cumulative evidence, stating, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence." While the information contained in Exhibit 28 was available in other exhibits, exhibit 28 is a summary of multiple records which allowed appellee to cross-examine the witness more readily, without delving into voluminous individual exhibits.  We agree with the trial court's assessment that the summary chart aided the jury in its deliberations because it distilled voluminous records down to the pertinent numbers and was *at most* cumulative.  T. 1378, emphasis added. Exclusion of cumulative evidence is discretionary, and we find no abuse of discretion in the trial court's admission of the evidence.

{¶40} Appellant also argues that Exhibit 28 was not provided in discovery, but this assertion was addressed at trial when appellee responded that the information contained in the summary exhibit was provided in discovery.

{¶41} We find appellant's arguments regarding Exhibit 28 unavailing, and the second assignment of error is overruled.

III., IV.

{¶42} Appellant's third and fourth assignments of error are related and will be considered together. She asserts that her convictions are not supported by sufficient evidence and are against the manifest weight of the evidence.  We disagree.

{¶43} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶44} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶45} Sufficiency of the evidence is a legal question dealing with whether the state met its burden of production at trial. *State v. Murphy*, 5th Dist. Stark No. 2015CA00024, 2015–Ohio–5108, ¶ 13, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d

541 (1997). "Specifically, an appellate court's function, when reviewing the sufficiency of the evidence to support a criminal conviction, is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *Murphy* at ¶ 15. The test for sufficiency of the evidence raises a question of law and does not permit the court to weigh the evidence. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Murphy* at ¶ 15, citing *Thompkins* at 386.

{¶46} Appellant was convicted upon one count of theft from a person in a protected class pursuant to R.C. 2913.02(A)(1) and (B)(3). Those sections state in pertinent part:

> (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

> (1) Without the consent of the owner or person authorized to give consent.

> * * * *.

> (B)(1) Whoever violates this section is guilty of theft.

> * * * *.

> (3) Except as otherwise provided in division (B)(4), (5), (6), (7), (8), or (9) of this section, if the victim of the offense is an elderly person * * * a violation of this section is theft from a person in a

protected class, and division (B)(3) of this section applies. Except as otherwise provided in this division, theft from a person in a protected class is a felony of the fifth degree. * * * *. If the value of the property or services stolen is thirty-seven thousand five hundred dollars or more and is less than one hundred fifty thousand dollars, theft from a person in a protected class is a felony of the second degree. * * * *. If the victim of the offense is an elderly person, in addition to any other penalty imposed for the offense, the offender shall be required to pay full restitution to the victim and to pay a fine of up to fifty thousand dollars. * * * *.

{¶47} Appellant was also found guilty upon one count of telecommunications fraud pursuant to R.C. 2913.05(A), which states in pertinent part:

(A) No person, having devised a scheme to defraud, shall knowingly disseminate, transmit, or cause to be disseminated or transmitted by means of a wire, radio, satellite, telecommunication, telecommunications device, telecommunications service, or voice over internet protocol service any writing, data, sign, signal, picture, sound, or image with purpose to execute or otherwise further the scheme to defraud.

* * * *.

(E)(1) * * * *. If the value of the benefit obtained by the offender or of the detriment to the victim of the fraud is seven thousand five hundred dollars or more but less than one hundred fifty

thousand dollars, telecommunications fraud is a felony of the third degree. * * * *.

{¶48} Finally, appellant was found guilty upon one count of identity fraud against a person in a protected class pursuant to R.C. 2913.49(B)(1) and/or (2), which state:

> (B) No person, without the express or implied consent of the other person, shall use, obtain, or possess any personal identifying information of another person with intent to do either of the following:

> (1) Hold the person out to be the other person;

> (2) Represent the other person's personal identifying information as the person's own personal identifying information.

> * * * *.

{¶49} First, appellant asserts her conviction for theft from an elderly person is based on insufficient evidence because an elderly person is 65 years of age or older. R.C. 2913.01(CC). Mother was born in 1947; the course of conduct prosecuted as Count II, theft from a person in a protected class, commenced in 2008, when Mother was 61 years old. The theft was discovered and ceased in 2015, when Mother was 68 years old. We note that a series of theft offenses involving a victim who is an elderly person or disabled adult may be prosecuted as a single offense pursuant to R.C. 2913.61(C)(2). Appellee was not required to prosecute the series of thefts as separate offenses based upon Mother's age. See, *State v. Pettus,* 163 Ohio St.3d 55, 2020-Ohio-4836 (2020) [R.C. 2913.61(C)(1) unambiguously permits aggregation of theft offenses when an individual commits a series of violations of the theft statute involving a victim who is an elderly person or disabled adult]. Appellee points out that while the statute requires the

victim to be 65 or older when the offense occurred, there is no authority requiring the victim to be 65 or older at the beginning of an ongoing course of conduct. We decline to interpret the statute in a way that would strip Mother of her protected class as an elderly person.

{¶50} Appellant next argues "the money laundering charges are based on insufficient evidence." Appellant was found not guilty upon the money laundering offenses, Counts V and VI, therefore her arguments are misplaced.

{¶51} Next, appellant asserts she did not act out of malice or ill will toward her mother, and the criminal conduct was merely sloppy record-keeping. Appellee was not required to prove appellant acted from ill will or malice, and we disagree with appellant's characterization of the evidence. Her reluctance to return the checkbook and bank statements to Mother, combined with her warning that "you won't be happy with me," indicate that appellant was aware her commingling of funds and siphoning of funds for her own purposes was not authorized. The evidence also established that appellant exploited her relationship with Mother, and Mother's physical and mental condition.

{¶52} Finally, appellant challenges Mother's credibility because some of the transactions Mother complained of proved to be authorized; further, she argues, Mother was heavily medicated when the disputed transactions took place and "memories fade." It is axiomatic, however, that the weight of the evidence and the credibility of the witnesses are determined by the trier of fact. *State v. Yarbrough,* 95 Ohio St.3d 227, 231, 2002–Ohio–2126, 767 N.E.2d 216. The trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility. *State v. DeHass,* 10 Ohio St.2d 230, 227

N.E.2d 212 (1967), paragraph one of the syllabus. Mother's recollections were only part of Cooper's investigation into whether the transactions were authorized.

{¶53} After weighing the evidence and evaluating the credibility of the witnesses, with appropriate deference to the trier of fact's credibility determination, we cannot say that the jury clearly lost its way and created a manifest injustice. Construing all the evidence in favor of appellee, sufficient evidence supports appellant's conviction. Also, this is not the case in which the jury clearly lost its way and created such a manifest miscarriage of justice that the convictions must be overturned, and a new trial ordered. Appellant's convictions are not against the manifest weight of the evidence.

{¶54} Appellant's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence. Her third and fourth assignments of error are overruled.

V.

{¶55} In her fifth assignment of error, appellant argues the trial court's restitution order should be reversed. We disagree.

{¶56} R.C. 2929.18(A)(1) authorizes a trial court to order restitution as part of a sentence to compensate a victim for economic loss. "Restitution" continues to mean compensation for economic losses or economic detriment suffered by the victim "as a direct and proximate result of the commission of the offense," *see* R.C. 2929.18(A)(1); R.C. 2929.28(A)(1); R.C. 2929.01(L). *State v. Yerkey*, 2022-Ohio-4298.

{¶57} We review restitution orders under an abuse-of-discretion standard. *State v. Hodge*, 5th Dist. Muskingum No. CT2019-0038, 2020-Ohio-901, ¶ 51 citing *State v. Sheets*, 5th Dist. Licking No. 17 CA 44, 2018-Ohio-996, 2018 WL 1358039, ¶ 15,

citing *State v. Cook*, 5th Dist. Fairfield No. 16-CA-28, 2017-Ohio-1503, 2017 WL 1436377, ¶ 8; *State v. Andrews*, 5th Dist. Delaware No. 15 CAA 12 0099, 2016-Ohio-7389, 2016 WL 6138888, ¶ 40. This Court has held that an order of restitution must be supported by competent and credible evidence from which the trial court can discern the amount of restitution to a reasonable degree of certainty. *Hodge* at ¶ 51 citing *Sheets, supra*, citing *State v. Spencer*, 5th Dist. Delaware No. 16 CAA 04 0019, 2017-Ohio-59, 2017 WL 90619, ¶ 44 (citations omitted); *State v. Frank*, 5th Dist. No. CT2017-0102, 2018-Ohio-5148, 127 N.E.3d 363, ¶ 64. Furthermore, a trial court abuses its discretion if it orders restitution in an amount that does not bear a reasonable relationship to the actual loss suffered. *Id.* (citations omitted).

{¶58} The evidence which supports a court's restitution order "can take the form of either documentary evidence or testimony." *State v. Moore*, 5th Dist. Guernsey No. 22 CA 000007, 2022-Ohio-4261, ¶ 12, citing *State v. Jones*, 10th Dist. Franklin No. 14AP-80, 2014-Ohio-3740.

{¶59} In the instant case, appellant summarily argues the trial court's restitution order of $83,000 (*sic*) exceeds the amount appellant calculated she owes Mother after accounting for offsets from rental payments, reimbursements, and money paid by appellant for Mother's expenses. Appellant contends she owes $23,179.

{¶60} First, we note the trial court's entry orders restitution in the amount of $70,325, payable to Mother, not $83,000 as appellant asserts.

{¶61} At the sentencing hearing, the trial court noted it used the trial testimony, exhibits, post-trial memoranda regarding restitution, and oral arguments of counsel to arrive at a restitution amount. Sentencing hearing, 28. The trial court noted appellee's

witness, Cooper, gave appellant credit for the 88 months of rental payments offset against the amount owed. Further, the trial court noted appellant claimed $12,675 in appellant's claimed reimbursements and money paid by appellant for Mother's expenses was not properly credited in appellee's restitution request, so the trial court deducted that amount. The trial court thus arrived at $70,325 as the amount owed.

{¶62} Based upon the foregoing, we find the trial court's order of restitution is supported by competent and credible evidence. Furthermore, we find the trial court did not abuse its discretion as the order of restitution bears a reasonable relationship to the actual loss suffered by Mother. *State v. Hoy*, 5th Dist. Delaware No. 21 CAC 03 0013, 2021-Ohio-4098, ¶ 32, *appeal not allowed,* 166 Ohio St.3d 1428, 2022-Ohio-743, 184 N.E.3d 105.

{¶63} Appellant's fifth assignment of error is overruled.

## CONCLUSION

{¶64} Appellant's five assignments of error are overruled, and the judgment of the Fairfield County Court of Common Pleas is affirmed.

By: Delaney, J.,

Wise, Earle, P.J. and

Hoffman, J., concur.